# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| IN RE: ACTOS PRODUCTS LIABILITY LITIGATION | MDL No. 6:11-md-2299 |
|  | JUDGE DOHERTY |
| William Auden, Individually and as the Proposed Representative of the Estate of Jolanta Auden, | MAGISTRATE JUDGE HANNA |
|  | Civil Action No.: _____ |
| Plaintiffs, |  |
| v. | BUNDLED COMPLAINT |
| TAKEDA PHARMACEUTICALS U.S.A., Inc. (fka TAKEDA PHARMACEUTICALS NORTH AMERICA, Inc.), TAKEDA PHARMACEUTICALS AMERICA, Inc., TAKEDA DEVELOPMENT CENTER AMERICAS, Inc. (fka TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER, Inc.), TAKEDA PHARMACEUTICALS INTERNATIONAL, Inc., TAKEDA PHARMACEUTICAL COMPANY LIMITED, and ELI LILLY &  COMPANY, |  |
| Defendants. |  |

Plaintiffs, by their attorneys, **WEITZ & LUXENBERG, P.C.**, allege as follows:

## SUBJECT MATTER JURISDICTION AND VENUE GENERALLY

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because complete diversity exists between the parties, as set forth below, Plaintiffs are citizens of states that are different from the states where the Defendants are incorporated and have their principal places of business.

2.     Venue is proper within this District pursuant to 28 U.S.C. § 1391 because it is a judicial district where Defendants are subject to personal jurisdiction in accordance with 28 U.S.C. § 1391(c).

## NATURE OF THE CASE

3.     This is an action for personal injury on behalf of Plaintiffs, loss of consortium on behalf of Plaintiffs' spouses and wrongful death on behalf of Plaintiffs' distributees against Defendants who were responsible for the prescription drug Actos and/or Actoplus Met, Actoplus Met XR and Duetact (Actos), a diabetes medication used by the injured Plaintiffs, as set for the below, that proximately caused the Plaintiffs to sustain injuries and damages.

4.     Defendants are in the business of researching, designing, developing, licensing, manufacturing, packaging, labeling, marketing, distributing and selling Actos and pioglitazone-containing medicines including Actoplus Met, Actoplus Met XR, and Duetact (hereinafter collectively referred to as "Actos"), which are prescription medicines for the treatment of type 2 diabetes.

5.     Defendants failed to warn Plaintiffs or their treating physicians and healthcare providers that there is a reasonable association of Actos to bladder cancer and heart damage.

6.     Defendants have concealed, and continue to conceal, from Plaintiffs or their treating physicians and healthcare providers, Defendants' knowledge of Actos' propensity to cause bladder cancer and heart damage.

7.     Had Plaintiffs been warned that Actos can cause bladder cancer, Plaintiffs, individually or through their treating physicians, would have chosen safer, alternative medicines which are effective at treating type 2 diabetes without an increased risk of serious, deadly adverse events, including bladder cancer and heart damage.

## PLAINTIFF SPECIFIC ALLEGATIONS

8.1    William Auden, Individually and as the Proposed Representative of the Estate of

Jolanta Auden alleges as follows:

a. Plaintiff Jolanta Auden was a citizen of Connecticut.

b. Plaintiff Jolanta Auden ingested Actos between approximately January 2011

and November 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Jolanta

Auden suffered bladder cancer and died on April 13, 2014.

d. Plaintiff  William Auden's loss of consortium claims are alleged in the ninth

cause of action.

e. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.2    Nancy Briggin, Individually and as the Proposed Representative of the Estate of

Joyce Weiner alleges as follows:

a. Plaintiff Joyce Weiner was a citizen of California.

b. Plaintiff Joyce Weiner ingested Actos between approximately March 2008 and

September 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff Joyce

Weiner suffered bladder cancer and died on October 2, 2009.

d. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.3    Deborah Brownlee, Individually and as the Proposed Representative of the Estate

of  Willie Brownlee alleges as follows:

a. Willie Brownlee was a citizen of California.

3

b. Plaintiff Willie Brownlee ingested Actos between approximately January 2002 and January 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff Willie Brownlee suffered bladder cancer and died on July 21, 2008.

d. Plaintiff  Deborah Brownlee's loss of consortium claims are alleged in the ninth cause of action.

e. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.4     Marie Butler, Individually and as the Proposed Representative of the Estate of James Butler alleges as follows:

a. Plaintiff James Butler was a citizen of Pennsylvania.

b. Plaintiff James Butler ingested Actos between approximately January 2009 and January 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff James Butler suffered bladder cancer and died on January 15, 2014.

d. Plaintiff  Marie Butler's loss of consortium claims are alleged in the ninth cause of action.

e. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.5     Miriam Carver, Individually and as the Proposed Representative of the Estate of Ervin Moore alleges as follows:

a. Plaintiff Ervin Moore was a citizen of North Carolina.

b. Plaintiff Ervin Moore ingested Actos between approximately December 2003 and July 2004.

c. Following and as a legal and proximate result of Actos use, Plaintiff Ervin

Moore suffered bladder cancer and died on September 19, 2007.

d. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.6    Patricia Joannou Condon, Individually and as the Proposed Representative of the

Estate of John Condon alleges as follows:

a. Plaintiff John Condon was a citizen of New York.

b. Plaintiff John Condon ingested Actos between approximately November 2009

and November 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff John

Condon suffered bladder cancer in approximately December 2013.

d. Plaintiff Patricia Joannou Condon's loss of consortium claims are alleged in the

ninth cause of action.

8.7    James Gagnon, Individually and as the Proposed Representative of the Estate of

Donald Gagnon alleges as follows:

a. Plaintiff Donald Gagnon was a citizen of New York.

b. Plaintiff Donald Gagnon ingested Actos between approximately January 2010

and July 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Donald

Gagnon suffered bladder cancer in approximately May 2013.

8.8    Evelyn Gibson, Individually and as the Proposed Representative of the Estate of

James Gibson alleges as follows:

a. Plaintiff James Gibson was a citizen of North Carolina.

b. Plaintiff James Gibson ingested Actos between approximately September 2010 and May 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff James Gibson suffered bladder cancer and died on January 9, 2015.

d. Plaintiff  Evelyn Gibson's loss of consortium claims are alleged in the ninth cause of action.

e. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.9   Robert Giffin, Individually and as the Proposed Representative of the Estate of Jean Giffin alleges as follows:

a. Plaintiff Jean Giffin was a citizen of California.

b. Plaintiff Jean Giffin ingested Actos between approximately January 2010 and June 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Jean Giffin suffered bladder cancer in approximately June 2012.

d. Plaintiff Robert Giffin's loss of consortium claims are alleged in the ninth cause of action.

8.10   Celestina Gomez, Individually and as the Proposed Representative of the Estate of Placido Gomez alleges as follows:

a. Plaintiff Placido Gomez was a citizen of Florida.

b. Plaintiff Placido Gomez ingested Actos between approximately January 2000 and December 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Placido Gomez suffered bladder cancer in approximately 2001.

d. Plaintiff  Celestina Gomez's loss of consortium claims are alleged in the ninth cause of action.

8.11    Hope Harris, Individually and as the Proposed Representative of the Estate of Daniel Harris alleges as follows:

a. Plaintiff Daniel Harris was a citizen of North Carolina.

b. Plaintiff Daniel Harris ingested Actos between approximately November 2006 and January 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff Daniel Harris suffered bladder cancer and died on January 29, 2008.

d. Plaintiff  Hope Harris' loss of consortium claims are alleged in the ninth cause of action.

e. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.12    Rosalie Haut, Individually and as the Proposed Representative of the Estate of Michael Haut alleges as follows:

a. Plaintiff Michael Haut was a citizen of Pennsylvania.

b. Plaintiff Michael Haut ingested Actos between approximately August 2001 and January 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff Michael Haut suffered bladder cancer and died on June 26, 2013.

d. Plaintiff  Rosalie Haut's loss of consortium claims are alleged in the ninth cause of action.

e. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.13    Janice Faye Hobby, Individually and as the Proposed Representative for the

Estate of Harold Hobby alleges as follows:

a. Plaintiff Harold Hobby was a citizen of Florida.

b. Plaintiff Harold Hobby ingested Actos between approximately March 2002 and

January 2006.

c. Following and as a legal and proximate result of Actos use, Plaintiff Harold

Hobby suffered bladder cancer and died on April 26, 2006.

d. Plaintiff Janice Faye Hobby's loss of consortium claims are alleged in the ninth

cause of action.

e. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.14    Audrey Levine, Individually and as the Proposed Representative of the Estate of

Harry Levine alleges as follows:

a. Plaintiff Audrey Levine, Individually and as the Proposed Representative of the

Estate of Harry Levine was a citizen of New York.

b. Plaintiff Harry Levine ingested Actos between approximately January 2001 and

August 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Harry

Levine suffered bladder cancer in approximately August 2011.

8.15    Lorraine Levy, Individually and as the Proposed Representative of the Estate of

Alan Levy alleges as follows:

a. Plaintiff Lorraine Levy, Individually and as the Proposed Representative of the

Estate of Alan Levy was a citizen of Virginia.

b. Plaintiff Alan Levy ingested Actos between approximately January 2002 and October 2006.

c. Following and as a legal and proximate result of Actos use, Plaintiff Alan Levy suffered bladder cancer in approximately February 2010.

d. Plaintiff Lorraine Levy's loss of consortium claims are alleged in the ninth cause of action.

8.16    Joanne Melville, Individually and as the Proposed Representative of the Estate of Noel Reynolds alleges as follows:

a. Plaintiff Noel Reynolds was a citizen of New York.

b. Plaintiff Noel Reynolds ingested Actos between approximately November 2000 and April 2007.

c. Following and as a legal and proximate result of Actos use, Plaintiff Noel Reynolds suffered bladder cancer and died on May 17, 2007.

d. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.17    Merdis Pewitt, Individually and as the Proposed Representative of the Estate of Alice Hite alleges as follows:

a. Plaintiff Alice Hite was a citizen of Tennessee.

b. Plaintiff Alice Hite ingested Actos between approximately January 2005 and March 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff Alice Hite suffered bladder cancer in approximately January 2008.

8.18    Donna Piechota, Individually and as the Executrix of the Estate of Pauline Piechota alleges as follows:

a. Plaintiff Pauline Piechota was a citizen of Pennsylvania.

b. Plaintiff Pauline Piechota ingested Actos between approximately May 2002 and May 2007.

c. Following and as a legal and proximate result of Actos use, Plaintiff Pauline Piechota suffered bladder cancer in approximately March 2007.

8.19    Darcie Roberts, Individually and as the Executrix of the Estate of  Robert Swistock alleges as follows:

a. Plaintiff Robert Swistock was a citizen of New Jersey.

b. Plaintiff Robert Swistock ingested Actos between approximately May 2003 and September 2007.

c. Following and as a legal and proximate result of Actos use, Plaintiff Robert Swistock suffered bladder cancer in approximately August 2007.

8.20    Georgina Romero, Individually and as the Proposed Representative of the Estate of Ramon Romero alleges as follows:

a. Plaintiff Ramon Romero was a citizen of Florida.

b. Plaintiff Ramon Romero ingested Actos between approximately January 2000 and July 2003.

c. Following and as a legal and proximate result of Actos use, Plaintiff Ramon Romero suffered bladder cancer and died on July 28, 2003.

d. Plaintiff Georgina Romero's loss of consortium claims are alleged in the ninth cause of action.

e. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.21    Ernest Schuster, Individually and as the Proposed Representative of the Estate of

Daisy Schuster alleges as follows:

a. Plaintiff Daisy Schuster was a citizen of Louisiana.

b. Plaintiff Daisy Schuster ingested Actos between approximately November

2008 and November 2009.

c. Following and as a legal and proximate result of Actos use, Plaintiff Daisy

Schuster suffered bladder cancer in approximately February 2011.

d. Plaintiff  Ernest Schuster's loss of consortium claims are alleged in the ninth

cause of action.

8.22    Mary Jane Tompkins, Individually and as the Proposed Representative of the

Estate of Gerald Tompkins alleges as follows:

a. Plaintiff Gerald Tompkins was a citizen of Colorado.

b. Plaintiff Gerald Tompkins ingested Actos between approximately January 2007

and December 2009.

c. Following and as a legal and proximate result of Actos use, Plaintiff Gerald

Tompkins suffered bladder cancer and died on January 7, 2014.

d. Plaintiff Mary Jane Tompkins' loss of consortium claims are alleged in the

ninth cause of action.

e. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.23    Carmen Toro, Individually and as the Proposed Representative of the Estate of

Angel Toro alleges as follows:

a. Plaintiff Angel Toro was a citizen of Ohio.

b. Plaintiff Angel Toro ingested Actos between approximately January 2003 and December 2009.

c. Following and as a legal and proximate result of Actos use, Plaintiff Angel Toro suffered bladder cancer in approximately May 2014.

8.24    Nora Varela-Binion, Individually and as the Proposed Representative of the Estate of Maria Varela alleges as follows:

a. Plaintiff Maria Varela was a citizen of Iowa.

b. Plaintiff Maria Varela ingested Actos between approximately June 2003 and December 2009.

c. Following and as a legal and proximate result of Actos use, Plaintiff Maria Varela suffered bladder cancer and died on April 29, 2014.

d. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.25    Norma Williams, Individually and as the Proposed Representative of the Estate of Marjorie McNeely alleges as follows:

a. Plaintiff Marjorie McNeely was a citizen of North Carolina.

b. Plaintiff Marjorie McNeely ingested Actos between approximately August 2006 and February 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff Marjorie McNeely suffered bladder cancer in approximately November 2005.

8.26    Juan Wilson, Individually and as the Proposed Representative of the Estate of Priscilla Brinson alleges as follows:

a. Plaintiff Priscilla Brinson was a citizen of Florida.

b. Plaintiff Priscilla Brinson ingested Actos between approximately October 2004 and September 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff Priscilla Brinson suffered bladder cancer in approximately April 2011.

8.27 Elinor Wurtzel, Individually and as the Proposed Representative of the Estate of Donald Wurtzel alleges as follows:

a. Plaintiff Donald Wurtzel was a citizen of Virginia.

b. Plaintiff Donald Wurtzel ingested Actos between approximately January 2000 and June 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Donald Wurtzel suffered bladder cancer and died on June 28, 2014.

d. Plaintiff Elinor Wurtzel's loss of consortium claims are alleged in the ninth cause of action.

e. Plaintiff's wrongful death claims are alleged in the tenth cause of action.

8.28 Vito Albanese and Joan Albanese allege as follows:

a. Plaintiffs Vito Albanese and Joan Albanese are citizens of New York.

b. Plaintiff Vito Albanese ingested Actos between approximately February 2010 and September 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Vito Albanese suffered bladder cancer in approximately October 2014.

d. Plaintiff Joan Albanese's loss of consortium claims are alleged in the ninth cause of action.

8.29 Clair Benten Alm alleges as follows:

a. Plaintiff Clair Benten Alm is a citizen of Arizona.

b. Plaintiff Clair Benten Alm ingested Actos between approximately January 2000 and November 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff Clair Benten Alm suffered bladder cancer in approximately January 2015.

8.30    Loveta Anderson alleges as follows:

a. Plaintiff Loveta Anderson is a citizen of California.

b. Plaintiff Loveta Anderson ingested Actos between approximately January 1999 and January 2009.

c. Following and as a legal and proximate result of Actos use, Plaintiff Loveta Anderson suffered bladder cancer in approximately May 2014.

8.31    Margaret Atkins alleges as follows:

a. Plaintiff Margaret Atkins is a citizen of New York.

b. Plaintiff Margaret Atkins ingested Actos between approximately October 2009 and October 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff Margaret Atkins suffered bladder cancer in approximately October 2009.


8.32    Walter Aurand and Kathleen Aurand allege as follows:

a. Plaintiffs Walter Aurand and Kathleen Aurand are citizens of New Jersey.

b. Plaintiff Walter Aurand ingested Actos between approximately November 2005 and December 2006.

c. Following and as a legal and proximate result of Actos use, Plaintiff Walter Aurand suffered bladder cancer in approximately July 2006.

d. Plaintiff  Kathleen Aurand's loss of consortium claims are alleged in the ninth cause of action.

8.33    John Babic alleges as follows:

a. Plaintiff John Babic is a citizen of New Jersey.

b. Plaintiff John Babic ingested Actos between approximately February 2006 and July 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff John Babic suffered bladder cancer in approximately May 2014.

8.34    Bernard Bailie and Rita Bailie allege as follows:

a. Plaintiffs Bernard Bailie and Rita Bailie are citizens of Washington.

b. Plaintiff Bernard Bailie ingested Actos between approximately January 2004 and December 2009.

c. Following and as a legal and proximate result of Actos use, Plaintiff Bernard Bailie suffered bladder cancer in approximately December 2010.

d. Plaintiff  Rita Bailie's loss of consortium claims are alleged in the ninth cause of action.


8.35    Gerald Becker and Doris Becker allege as follows:

a. Plaintiffs Gerald Becker and Doris Becker are citizens of New Jersey.

b. Plaintiff Gerald Becker ingested Actos between approximately September 2007 and November 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Gerald Becker suffered bladder cancer in approximately November 2013.

d. Plaintiff  Doris Becker's loss of consortium claims are alleged in the ninth cause of action.

8.36    Patricia Benjamin alleges as follows:

a. Plaintiff Patricia Benjamin is a citizen of Kansas.

b. Plaintiff Patricia Benjamin ingested Actos between approximately January 2003 and January 2006.

c. Following and as a legal and proximate result of Actos use, Plaintiff Patricia Benjamin suffered bladder cancer in approximately October 2014.

8.37    Cirillo Berardozzi and Giovanna Berardozzi allege as follows:

a. Plaintiffs Cirillo Berardozzi and Giovanna Berardozzi are citizens of Connecticut.

b. Plaintiff Cirillo Berardozzi ingested Actos between approximately July 2007 and October 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Cirillo Berardozzi suffered bladder cancer in approximately October 2013.

d. Plaintiff Giovanna Berardozzi's loss of consortium claims are alleged in the ninth cause of action.

8.38    Blair Bierkamp alleges as follows:

a. Plaintiff Blair Bierkamp is a citizen of Virginia.

b. Plaintiff Blair Bierkamp ingested Actos between approximately July 2010 and September 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Blair Bierkamp suffered bladder cancer in approximately September 2013.

8.39   Walter Boles and Patricia Boles allege as follows:

a. Plaintiffs Walter Boles and Patricia Boles are citizens of Georgia.

b. Plaintiff Walter Boles ingested Actos between approximately November 2007 and December 2009.

c. Following and as a legal and proximate result of Actos use, Plaintiff Walter Boles suffered bladder cancer in approximately February 2014.

d. Plaintiff Patricia Bole's loss of consortium claims are alleged in the ninth cause of action.

8.40   Charlie Bowen and Cheryl Bowen allege as follows:

a. Plaintiffs Charlie Bowen and Cheryl Bowen are citizens of Florida.

b. Plaintiff Charlie Bowen ingested Actos between approximately January 2002 and January 2004.

c. Following and as a legal and proximate result of Actos use, Plaintiff Charlie Bowen suffered bladder cancer in approximately August 2005.

d. Plaintiff Cheryl Bowen's loss of consortium claims are alleged in the ninth cause of action.

8.41   John W. Burns and Anita Burns allege as follows:

a. Plaintiffs John W. Burns and Anita Burns are citizens of California.

b. Plaintiff John W. Burns ingested Actos between approximately March 2011 and April 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff John W. Burns suffered bladder cancer in approximately February 2013.

d. Plaintiff Anita Burns' loss of consortium claims are alleged in the ninth cause of action.

8.42    William Burris and Lori Burris allege as follows:

a. Plaintiffs William Burris and Lori Burris are citizens of Arkansas.

b. Plaintiff William Burris ingested Actos between approximately June 2010 and December 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff William Burris suffered bladder cancer in approximately June 2014.

d. Plaintiff Lori Burris' loss of consortium claims are alleged in the ninth cause of action.

8.43    Katherine Burris alleges as follows:

a. Plaintiff Katherine Burris is a citizen of Pennsylvania.

b. Plaintiff Katherine Burris ingested Actos between approximately October 2005 and December 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Katherine Burris suffered bladder cancer in approximately August 2010.

8.44    Bhadra Butala and Gita Butala allege as follows:

a. Plaintiffs Bhadra Butala and Gita Butala are citizens of New Jersey.

b. Plaintiff Bhadra Butala ingested Actos between approximately January 2000 and December 2004.

c. Following and as a legal and proximate result of Actos use, Plaintiff Bhadra Butala suffered bladder cancer in approximately December 2009.

d. Plaintiff  Gita Butala's loss of consortium claims are alleged in the ninth cause of action.

8.45    Laura Campbell and Waverly Futrell allege as follows:

a. Plaintiffs Laura Campbell and Waverly Futrell are citizens of New York.

b. Plaintiff Laura Campbell ingested Actos between approximately December 2007 and September 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Laura Campbell suffered bladder cancer in approximately November 2013.

d. Plaintiff Waverly Futrell's loss of consortium claims are alleged in the ninth cause of action.

8.46    Blanca Carreras and Luis Carreras allege as follows:

a. Plaintiffs Blanca Carreras and Luis Carreras are citizens of Florida.

b. Plaintiff Blanca Carreras ingested Actos between approximately January 2001 and February 2015.

c. Following and as a legal and proximate result of Actos use, Plaintiff Blanca Carreras suffered bladder cancer in approximately February 2015.

d. Plaintiff Luis Carreras' loss of consortium claims are alleged in the ninth cause of action.

8.47    Eugene Cloutier alleges as follows:

a. Plaintiff Eugene Cloutier is a citizen of New York.

b. Plaintiff Eugene Cloutier ingested Actos between approximately January 2005 and Present.

c. Following and as a legal and proximate result of Actos use, Plaintiff Eugene Cloutier suffered bladder cancer in approximately June 2014.

8.48    Michele Cole alleges as follows:

a. Plaintiff Michele Cole is a citizen of New York.

b. Plaintiff Michele Cole ingested Actos between approximately May 2001 and September 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff Michele Cole suffered bladder cancer in approximately September 2014.

8.49    Albert Conde alleges as follows:

a. Plaintiff Albert Conde is a citizen of Texas.

b. Plaintiff Albert Conde ingested Actos between approximately January 2005 and January 2002.

c. Following and as a legal and proximate result of Actos use, Plaintiff Albert Conde suffered bladder cancer in approximately December 2002.

8.50    Anthony Cosy alleges as follows:

a. Plaintiff Anthony Cosy is a citizen of California.

b. Plaintiff Anthony Cosy ingested Actos between approximately January 2002 and January 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Anthony Cosy suffered bladder cancer in approximately August 2006.

8.51    Ferdinand Cutolo and Barbara Cutolo allege as follows:

a. Plaintiffs Ferdinand Cutolo and Barbara Cutolo are citizens of New Jersey.

b. Plaintiff Ferdinand Cutolo ingested Actos between approximately May 2007 and July 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Ferdinand Cutolo suffered bladder cancer in approximately May 2014.

d. Plaintiff Barbara Cutolo's loss of consortium claims are alleged in the ninth cause of action.

8.52   Betsy Dail alleges as follows:

a. Plaintiff Betsy Dail is a citizen of North Carolina.

b. Plaintiff Betsy Dail ingested Actos between approximately March 2009 and December 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Betsy Dail suffered bladder cancer in approximately October 2013.

8.53   Alan Darson and Deborah Darson allege as follows:

a. Plaintiffs Alan Darson and Deborah Darson are citizens of Massachusetts.

b. Plaintiff Alan Darson ingested Actos between approximately February 2008 and September 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Alan Darson suffered bladder cancer in approximately August 2014.

d. Plaintiff  Deborah Darson's loss of consortium claims are alleged in the ninth cause of action.

8.54   Frankie DeClue and Patsy DeClue allege as follows:

a. Plaintiffs Frankie DeClue and Patsy DeClue are citizens of Missouri.

b. Plaintiff Frankie DeClue ingested Actos between approximately June 2006 and August 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Frankie DeClue suffered bladder cancer in approximately May 2011.

d. Plaintiff Patsy DeClue's loss of consortium claims are alleged in the ninth cause of action.

8.55    David DeMerchant alleges as follows:

a. Plaintiff David DeMerchant is a citizen of Maine.

b. Plaintiff David DeMerchant ingested Actos between approximately March 2010 and December 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff David DeMerchant suffered bladder cancer in approximately April 2014.

8.56    Richard Dering and Judith Smith Dering allege as follows:

a. Plaintiffs Richard Dering and Judith Smith Dering are citizens of New Jersey.

b. Plaintiff Richard Dering ingested Actos between approximately December 2002 and October 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Richard Dering suffered bladder cancer in approximately June 2013.

d. Plaintiff Judith Smith Dering's loss of consortium claims are alleged in the ninth cause of action.

8.57    Eugenio Diaz and Felipa Diaz allege as follows:

a. Plaintiffs Eugenio Diaz and Felipa Diaz are citizens of Texas.

22

b. Plaintiff Eugenio Diaz ingested Actos between approximately January 2000 and December 2004.

c. Following and as a legal and proximate result of Actos use, Plaintiff Eugenio Diaz suffered bladder cancer in approximately January 2015.

d. Felipa Diaz's loss of consortium claims are alleged in the ninth cause of action.

8.58   Peter Diehr alleges as follows:

a. Plaintiff Peter Diehr is a citizen of Michigan.

b. Plaintiff Peter Diehr ingested Actos between approximately June 2004 and November 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff Peter Diehr suffered bladder cancer in approximately April 2011.

8.59   John J. Doyle and Sylvia Doyle allege as follows:

a. Plaintiffs John J. Doyle and Sylvia Doyle are citizens of Wisconsin.

b. Plaintiff John J. Doyle ingested Actos between approximately April 2000 and December 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff John J. Doyle suffered bladder cancer in approximately July 2007.

d. Plaintiff Sylvia Doyle's loss of consortium claims are alleged in the ninth cause of action.

8.60   Roger Eichenholtz alleges as follows:

a. Plaintiff Roger Eichenholtz is a citizen of New York.

b. Plaintiff Roger Eichenholtz ingested Actos between approximately April 2009 and June 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Roger

Eichenholtz suffered bladder cancer in approximately August 2011.

8.61    Frank Ferraro alleges as follows:

a. Plaintiff Frank Ferraro is a citizen of New York.

b. Plaintiff Frank Ferraro ingested Actos between approximately February 2011

and January 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Frank

Ferraro suffered bladder cancer in approximately April 2014.

8.62    Eugene Ferris alleges as follows:

a. Plaintiff Eugene Ferris is a citizen of Michigan.

b. Plaintiff Eugene Ferries ingested Actos between approximately February 2010

and January 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Eugene

Ferries suffered bladder cancer in approximately November 2013.

8.63    Charles M. Fields and Laurel Fields allege as follows:

a. Plaintiffs Charles M. Fields and Laurel Fields are citizens of Wisconsin.

b. Plaintiff Charles M. Fields ingested Actos between approximately January

2012 and December 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Charles M.

Fields suffered bladder cancer in approximately January 2015.

d. Plaintiff Laurel Fields' loss of consortium claims are alleged in the ninth cause

of action.

8.64    Martha Flores alleges as follows:

a. Plaintiff Martha Flores is a citizen of Texas.

b. Plaintiff Martha Flores ingested Actos between approximately January 2007 and Present.

c. Following and as a legal and proximate result of Actos use, Plaintiff Martha Flores suffered bladder cancer in approximately March 2014.

8.65    Wesley Forman and Kathy Forman allege as follows:

a. Plaintiffs Wesley Forman and Kathy Forman are citizens of Louisiana.

b. Plaintiff Wesley Forman ingested Actos between approximately April 2004 and January 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff Wesley Forman suffered bladder cancer in approximately July 2005.

d. Plaintiff Kathy Forman's loss of consortium claims are alleged in the ninth cause of action.

8.66    Evonne Freyberg alleges as follows:

a. Plaintiff Evonne Freyberg is a citizen of South Dakota.

b. Plaintiff Evonne Freyberg ingested Actos between approximately March 2011 and September 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Evonne Freyberg suffered bladder cancer in approximately January 2015.

8.67    Robert Fuentes alleges as follows:

a. Plaintiff Robert Fuentes is a citizen of California.

b. Plaintiff Robert Fuentes ingested Actos between approximately October 2012 and July 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Robert Fuentes suffered bladder cancer in approximately September 2013.

8.68    James Galbreath and Betty Galbreath allege as follows:

a. Plaintiffs James Galbreath and Betty Galbreath are citizens of North Carolina.

b. Plaintiff James Galbreath ingested Actos between approximately February 2011 and August 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff James Galbreath suffered bladder cancer in approximately November 2012.

d. Plaintiff  Betty Galbreath's loss of consortium claims are alleged in the ninth cause of action.

8.69    Nicholas Garafola and Ginette Garafola allege as follows:

a. Plaintiffs Nicholas Garafola and Ginette Garafola are citizens of New York.

b. Plaintiff Nicholas Garafola ingested Actos between approximately November 2010 and July 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Nicholas Garafola suffered bladder cancer in approximately January 2014.

d. Plaintiff Ginette Garafola's loss of consortium claims are alleged in the ninth cause of action.

8.70    Norman Gerdel alleges as follows:

a. Plaintiff Norman Gerdel is a citizen of California.

b. Plaintiff Normal Gerdel ingested Actos between approximately August 2008 and April 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Normal Gerdel suffered bladder cancer in approximately May 2014.

8.71    Robert Gerpheide alleges as follows:

a. Plaintiff Robert Gerpheide is a citizen of California.

b. Plaintiff Robert Gerpheide ingested Actos between approximately January 2001 and January 2004.

c. Following and as a legal and proximate result of Actos use, Plaintiff Robert Gerpheide suffered bladder cancer in approximately January 2004.

8.72    Tommy Gober alleges as follows:

a. Plaintiff Tommy Gober is a citizen of Texas.

b. Plaintiff Tommy Gober ingested Actos between approximately September 2004 and June 2009.

c. Following and as a legal and proximate result of Actos use, Plaintiff Tommy Gober suffered bladder cancer in approximately November 2011.

8.73    Duane Goman alleges as follows:

a. Plaintiff Duane Goman is a citizen of Wisconsin.

b. Plaintiff Duane Goman ingested Actos between approximately January 2004 and December 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff Duane Goman suffered bladder cancer in approximately June 2014.

8.74    Lawrence Gordon and Elaine Gordon allege as follows:

a. Plaintiffs Lawrence Gordon and Elaine Gordon are citizens of New Jersey.

b. Plaintiff Lawrence Gordon ingested Actos between approximately April 2005 and June 2006.

c. Following and as a legal and proximate result of Actos use, Plaintiff Lawrence Gordon suffered bladder cancer in approximately January 2014.

d. Plaintiff  Elaine Gordon's loss of consortium claims are alleged in the ninth cause of action.

8.75    John Gradwohl allege as follows:

a. Plaintiff John Gradwohl is a citizen of New York.

b. Plaintiff John Gradwohl ingested Actos between approximately January 2006 and January 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff John Gradwohl suffered bladder cancer in approximately March 2012.

8.76    Norma Griffin alleges as follows:

a. Plaintiff Norma Griffin is a citizen of California.

b. Plaintiff Norma Griffin ingested Actos between approximately January 2005 and September 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff Norma Griffin suffered bladder cancer in approximately September 2010.

8.77    Glenn Griffith alleges as follows:

a. Plaintiff Glenn Griffith is a citizen of Arizona.

b. Plaintiff Glenn Griffith ingested Actos between approximately January 2005 and January 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Glenn Griffith suffered bladder cancer in approximately March 2011.

8.78    Paul Griffo alleges as follows:

a. Plaintiff Paul Griffo is a citizen of New Jersey.

b. Plaintiff Paul Griffo ingested Actos between approximately January 2000 and April 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff Paul Griffo suffered bladder cancer in approximately June 2014.

8.79    Carlos Guzman and Vilma Guzman allege as follows:

a. Plaintiffs Carlos Guzman and Vilma Guzman are citizens of Florida.

b. Plaintiff Carlos Guzman ingested Actos between approximately January 2009 and December 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff Carlos Guzman suffered bladder cancer in approximately July 2011.

d. Plaintiff  Vilma Guzman's loss of consortium claims are alleged in the ninth cause of action.

8.80    Jim Haase and Linda Haase allege as follows:

a. Plaintiffs Jim Haase and Linda Haase are citizens of Michigan.

b. Plaintiff Jim Haase ingested Actos between approximately January 2009 and December 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff Jim Haase suffered bladder cancer in approximately November 2014.

d. Plaintiff  Linda Haase's loss of consortium claims are alleged in the ninth cause of action.

8.81   Peter Halecki alleges as follows:

a. Plaintiff Peter Halecki is a citizen of New Jersey.

b. Plaintiff Peter Halecki ingested Actos between approximately December 2010 and September 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Peter Halecki suffered bladder cancer in approximately November 2013.

8.82   Mark Harmsen alleges as follows:

a. Plaintiff Mark Harmsen is a citizen of Oregon.

b. Plaintiff Mark Harmsen ingested Actos between approximately August 2010 and December 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Mark Harmsen suffered bladder cancer in approximately September 2012.

8.83   Molly Harris alleges as follows:

a. Plaintiff Molly Harris is a citizen of North Carolina.

b. Plaintiff Molly Harris ingested Actos between approximately June 2001 and September 2007.

c. Following and as a legal and proximate result of Actos use, Plaintiff Molly Harris suffered bladder cancer in approximately July 2004.

8.84   Robert Hausmann and Jean Hausmann allege as follows:

a. Plaintiffs Robert Hausmann and Jean Hausmann are citizens of New York.

b. Plaintiff Robert Hausmann ingested Actos between approximately December 2011 and April 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff Robert Hausmann suffered bladder cancer in approximately October 2013.

d. Plaintiff  Jean Hausmann's loss of consortium claims are alleged in the ninth cause of action.

8.85   Terry G. Hike alleges as follows:

a. Plaintiff Terry G. Hike is a citizen of North Carolina.

b. Plaintiff Terry G. Hike ingested Actos between approximately January 2000 and December 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Terry G. Hike suffered bladder cancer in approximately August 2005.

8.86   Ray Howell alleges as follows:

a. Plaintiff Ray Howell is a citizen of North Carolina.

b. Plaintiff Ray Howell ingested Actos between approximately April 2005 and December 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff Ray Howell suffered bladder cancer in approximately January 2006.

8.87   Raymond Iannuzzelli and Lenora Iannuzzelli allege as follows:

a. Plaintiffs Raymond Iannuzzelli and Lenora Iannuzzelli are citizens of New Jersey.

b. Plaintiff Raymond Iannuzzelli ingested Actos between approximately November 2005 and August 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Raymond Iannuzzelli suffered bladder cancer in approximately November 2013.

d. Plaintiff  Lenora Iannuzzelli's loss of consortium claims are alleged in the ninth cause of action.

8.88    Mary E. Jackson alleges as follows:

a. Plaintiff Mary E. Jackson is a citizen of New Jersey.

b. Plaintiff Mary E. Jackson ingested Actos between approximately December 1999 and September 2005.

c. Following and as a legal and proximate result of Actos use, Plaintiff Mary E. Jackson suffered bladder cancer in approximately September 2012.

8.89    Arthur Jarman alleges as follows:

a. Plaintiff Arthur Jarman is a citizen of California.

b. Plaintiff Arthur Jarman ingested Actos between approximately January 1999 and December 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Arthur Jarman suffered bladder cancer in approximately July 2013.

8.90    William Jefkin and Carole Jefkin allege as follows:

a. Plaintiffs William Jefkin and Carole Jefkin are citizens of California.

b. Plaintiff William Jefkin ingested Actos between approximately January 2005 and January 2009.

c. Following and as a legal and proximate result of Actos use, Plaintiff William Jefkin suffered bladder cancer in approximately January 2009.

d. Plaintiff  Carole Jefkin's loss of consortium claims are alleged in the ninth cause of action.

8.91   Paul Karaszewski alleges as follows:

a. Plaintiff Paul Karaszewski is a citizen of New York.

b. Plaintiff Paul Karaszewski ingested Actos between approximately April 2000 and June 2003.

c. Following and as a legal and proximate result of Actos use, Plaintiff Paul Karaszewski suffered bladder cancer in approximately October 2008.

8.92   Scott Kinsbursky alleges as follows:

a. Plaintiff Scott Kinsbursky is a citizen of California.

b. Plaintiff Scott Kinsbursky ingested Actos between approximately January 2006 and January 2009.

c. Following and as a legal and proximate result of Actos use, Plaintiff Scott Kinsbursky suffered bladder cancer in approximately February 2009.

8.93   Irving Kohn and Marilyn Kohn allege as follows:

a. Plaintiffs Irving Kohn and Marilyn Kohn are citizens of Florida.

b. Plaintiff Irving Kohn ingested Actos between approximately July 2000 and October 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Irving Kohn suffered bladder cancer in approximately August 2006.

d. Plaintiff Marjorie Lobmeyer's loss of consortium claims are alleged in the ninth cause of action.

8.94    William Kramer and Naomi Kramer allege as follows:

a. Plaintiffs William Kramer and Naomi Kramer are citizens of New York.

b. Plaintiff William Kramer ingested Actos between approximately January 2012 and July 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff William Kramer suffered bladder cancer in approximately September 2014.

d. Plaintiff Naomi Kramer's loss of consortium claims are alleged in the ninth cause of action.

8.95    Duane Krauss and Virgie Krauss allege as follows:

a. Plaintiffs Duane Krauss and Virgie Krauss are citizens of Missouri.

b. Plaintiff Duane Krauss ingested Actos between approximately January 2007 and January 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Duane Krauss suffered bladder cancer in approximately January 2012.

d. Plaintiff Virgie Krauss's loss of consortium claims are alleged in the ninth cause of action.

8.96    Vincent Liotta and Joan Liotta allege as follows:

a. Plaintiffs Vincent Liotta and Joan Liotta are citizens of Florida.

b. Plaintiff Vincent Liotta ingested Actos between approximately July 2008 and August 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Vincent Liotta suffered bladder cancer in approximately May 2009.

d. Plaintiff Joan Liotta's loss of consortium claims are alleged in the ninth cause of action.

8.97   Nicholas Lobmeyer and Marjorie Lobmeyer allege as follows:

a. Plaintiffs Nicholas Lobmeyer and Marjorie Lobmeyer are citizens of New York.

b. Plaintiff Nicholas Lobmeyer ingested Actos between approximately March 2009 and May 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Nicholas Lobmeyer suffered bladder cancer in approximately May 2013.

8.98   Mary Locklear alleges as follows:

a. Plaintiff Mary Locklear is a citizen of North Carolina.

b. Plaintiff Mary Locklear ingested Actos between approximately January 2008 and December 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff Mary Locklear suffered bladder cancer in approximately November 2009.

8.99   Richard E. Long alleges as follows:

a. Plaintiff Richard E. Long is a citizen of California.

b. Plaintiff Richard E. Long ingested Actos between approximately January 2000 and November 2001.

c. Following and as a legal and proximate result of Actos use, Plaintiff Richard E. Long suffered bladder cancer in approximately November 2001.

8.100   Confesor Lopez alleges as follows:

a. Plaintiff Confesor Lopez is a citizen of New York.

b. Plaintiff Confesor Lopez ingested Actos between approximately January 2000 and December 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Confesor Lopez suffered bladder cancer in approximately April 2012.

8.101   Shirley Maholmes-Triplett alleges as follows:

a. Plaintiff Shirley Maholmes-Triplett is a citizen of Wisconsin.

b. Plaintiff Shirley Maholmes-Triplett ingested Actos between approximately 2000 and 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Shirley Maholmes-Triplett suffered bladder cancer .

8.102   Henry McCormick alleges as follows:

a. Plaintiff Henry McCormick is a citizen of West Virginia.

b. Plaintiff Henry McCormick ingested Actos between approximately January 2008 and October 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Henry McCormick suffered bladder cancer in approximately November 2013.

8.103   John T. McDonald alleges as follows:

a. Plaintiff John T. McDonald is a citizen of Oklahoma.

b. Plaintiff John T. McDonald ingested Actos between approximately January 2001 and January 2007.

c. Following and as a legal and proximate result of Actos use, Plaintiff John T. McDonald suffered bladder cancer in approximately September 2011.

8.104   Mamie McGlohone alleges as follows:

a. Plaintiff Mamie McGlohone is a citizen of North Carolina.

b. Plaintiff Mamie McGlohone ingested Actos between approximately October 2005 and October 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Mamie McGlohone suffered bladder cancer in approximately January 2010.

8.105   Joan McGonigle and James McGonigle allege as follows:

a. Plaintiffs Joan McGonigle and James McGonigle are citizens of Pennsylvania.

b. Plaintiff Joan McGonigle ingested Actos between approximately February 2009 and June 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Joan McGonigle suffered bladder cancer in approximately August 2013.

d. Plaintiff James McGonigle's loss of consortium claims are alleged in the ninth cause of action.

8.106   Richard McKivergan alleges as follows:

a. Plaintiff Richard McKivergan is a citizen of Arizona.

b. Plaintiff Richard McKivergan ingested Actos between approximately May 2007 and August 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Richard McKivergan suffered bladder cancer in approximately May 2014.

8.107   William Merrill alleges as follows:

a. Plaintiff William Merrill is a citizen of Michigan.

b. Plaintiff William Merrill ingested Actos between approximately January 2000 and August 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff William Merrill suffered bladder cancer in approximately June 2014.

8.108   James Merritt and Susan Merritt allege as follows:

a. Plaintiffs James Merritt and Susan Merritt are citizens of Nevada.

b. Plaintiff James Merritt ingested Actos between approximately October 2002 and October 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff James Merritt suffered bladder cancer in approximately May 2014.

d. Plaintiff Susan Merritt's loss of consortium claims are alleged in the ninth cause of action.

8.109   Leo Metzler and Margaret Metzler allege as follows:

a. Plaintiffs Leo Metzler and Margaret Metzler are citizens of Pennsylvania.

b. Plaintiff Leo Metzler ingested Actos between approximately May 2004 and January 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff Leo Metzler suffered bladder cancer in approximately September 2013.

d. Plaintiff Margaret Metzler's loss of consortium claims are alleged in the ninth cause of action.

8.110   Jean Montgomery alleges as follows:

a. Plaintiff Jean Montgomery is a citizen of Florida.

b. Plaintiff Jean Montgomery ingested Actos between approximately May 2008 and August 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Jean Montgomery suffered bladder cancer in approximately June 2012.

8.111   Frank Morassi and Marlene Morassi allege as follows:

a. Plaintiffs Frank Morassi and Marlene Morassi are citizens of Massachusetts.

b. Plaintiff Frank Morassi ingested Actos between approximately March 2006 and June 2007.

c. Following and as a legal and proximate result of Actos use, Plaintiff Frank Morassi suffered bladder cancer in approximately August 2012.

d. Plaintiff Margaret Morassi's loss of consortium claims are alleged in the ninth cause of action.

8.112   Harry C. Nelson alleges as follows:

a. Plaintiff Harry C. Nelson is a citizen of Pennsylvania.

b. Plaintiff Harry C. Nelson ingested Actos between approximately April 2009 and June 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Harry C. Nelson suffered bladder cancer in approximately June 2014.

8.113   Shirlee Newan alleges as follows:

a. Plaintiff Shirlee Newan is a citizen of Missouri.

b. Plaintiff Shirlee Newan ingested Actos between approximately May 2005 and July 2006.

c. Following and as a legal and proximate result of Actos use, Plaintiff Shirlee Newan suffered bladder cancer in approximately December 2005.

8.114   Jerald Nichols alleges as follows:

a. Plaintiff Jerald Nichols is a citizen of Alabama.

b. Plaintiff Jerald Nichols ingested Actos between approximately January 2008 and June 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Jerald Nichols suffered bladder cancer in approximately July 2013.

8.115   Billy Nix alleges as follows:

a. Plaintiff Billy Nix is a citizen of Mississippi.

b. Plaintiff Billy Nix ingested Actos between approximately December 2007 and November 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff Billy Nix suffered bladder cancer in approximately November 2008.

8.116   Luz Nunez alleges as follows:

a. Plaintiff Luz Nunez is a citizen of Florida.

b. Plaintiff Luz Nunez ingested Actos between approximately December 2009 and January 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Luz Nunez suffered bladder cancer in approximately May 2010.

8.117   Rose Marie Ossowski alleges as follows:

a. Plaintiff Rose Marie Ossowski is a citizen of Texas.

b. Plaintiff Rose Marie Ossowski ingested Actos between approximately January 2002 and May 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff Rose Marie Ossowski suffered bladder cancer in approximately July 2007.

8.118   Joseph Pacifico and Elizabeth Pacifico allege as follows:

a. Plaintiffs Joseph Pacifico and Elizabeth Pacifico are citizens of Florida.

b. Plaintiff Joseph Pacifico ingested Actos between approximately February 2010 and October 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff Joseph Pacifico suffered bladder cancer in approximately October 2014.

d. Plaintiff Elizabeth Pacifico's loss of consortium claims are alleged in the ninth cause of action.

8.119   Sudhir Padala and Batala Senapati allege as follows:

a. Plaintiffs Sudhir Padala and Batala Senapati are citizens of Florida.

b. Plaintiff Sudhir Padala ingested Actos between approximately June 2005 and June 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff Sudhir Padala suffered bladder cancer in approximately June 2014.

d. Plaintiff Batala Senapati's loss of consortium claims are alleged in the ninth cause of action.

8.120   Willis Passley alleges as follows:

a. Plaintiff Willis Passley is a citizen of Missouri.

b. Plaintiff Willis Passley ingested Actos between approximately July 2009 and June 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Willis Passley suffered bladder cancer in approximately January 2014.

8.121   Rosemberg Patino and Karen Patino allege as follows:

a. Plaintiffs Rosemberg Patino and Karen Patino are citizens of New York.

b. Plaintiff Rosemberg Patino ingested Actos between approximately May 2003 and January 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Rosemberg Patino suffered bladder cancer in approximately June 2014.

d. Plaintiff Karen Patino's loss of consortium claims are alleged in the ninth cause of action.

8.122   Lenard Pennington alleges as follows:

a. Plaintiff Lenard Pennington is a citizen of Virginia.

b. Plaintiff Lenard Pennington ingested Actos between approximately December 2010 and August 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Lenard Pennington suffered bladder cancer in approximately February 2013.

8.123   Donald Ponsi and Margaret Ponsi allege as follows:

a. Plaintiffs Donald Ponsi and Margaret Ponsi are citizens of New Jersey.

b. Plaintiff Donald Ponsi ingested Actos between approximately February 2009 and October 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Donald Ponsi suffered bladder cancer in approximately November 2014.

d. Plaintiff Margaret Ponsi's loss of consortium claims are alleged in the ninth cause of action.

8.124   Philip Rabb and Mary Rabb allege as follows:

a. Plaintiffs Philip Rabb and Mary Rabb are citizens of Louisiana.

b. Plaintiff Philip Rabb ingested Actos between approximately January 2005 and August 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Philip Rabb suffered bladder cancer in approximately April 2014.

d. Plaintiff Mary Rabb's loss of consortium claims are alleged in the ninth cause of action.

8.125   Charles Raspanti and Antoinette Raspanti allege as follows:

a. Plaintiffs Charles Raspanti and Antoinette Raspanti are citizens of New Jersey.

b. Plaintiff Charles Raspanti ingested Actos between approximately May 2005 and November 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Charles Raspanti suffered bladder cancer in approximately February 2007.

d. Plaintiff Antoinette Raspanti's loss of consortium claims are alleged in the ninth cause of action.

8.126   Horst Richheimer alleges as follows:

a. Plaintiff Horst Richheimer is a citizen of New York.

b. Plaintiff Horst Richheimer ingested Actos between approximately January 2008 and April 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Horst Richheimer suffered bladder cancer in approximately April 2013.

8.127   Jean A. Robinson alleges as follows:

a. Plaintiff Jean A. Robinson is a citizen of California.

b. Plaintiff Jean A. Robinson ingested Actos between approximately February 2010 and April 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff Jean A. Robinson suffered bladder cancer in approximately June 2014.

8.128   Phyllis Ropacki alleges as follows:

a. Plaintiff Phyllis Ropacki is a citizen of Arizona.

b. Plaintiff Phyllis Ropacki ingested Actos between approximately January 2000 and May 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Phyllis Ropacki suffered bladder cancer in approximately October 2014.

8.129   Diane Rowell alleges as follows:

a. Plaintiff Diane Rowell is a citizen of Alabama.

b. Plaintiff Diane Rowell ingested Actos between approximately March 2007 and December 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff Diane Rowell suffered bladder cancer in approximately 2008.

8.130   Eva Ruberto and Charles Taylor allege as follows:

a. Plaintiffs Eva Ruberto and Charles Taylor are citizens of California.

b. Plaintiff Eva Ruberto ingested Actos between approximately July 2006 and October 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Eva Ruberto suffered bladder cancer in approximately September 2013.

d. Plaintiff  Charles Taylor's loss of consortium claims are alleged in the ninth cause of action.

8.131   Leslie Rudolph alleges as follows:

a. Plaintiff Leslie Rudolph is a citizen of New Jersey.

b. Plaintiff Leslie Rudolph ingested Actos between approximately October 2006 and October 2007.

c. Following and as a legal and proximate result of Actos use, Plaintiff Leslie Rudolph suffered bladder cancer in approximately August 2010.

8.132   Michael Russo and Phyllis Russo allege as follows:

a. Plaintiffs Michael Russo and Phyllis Russo are citizens of California.

b. Plaintiff Michael Russo ingested Actos between approximately January 2007 and November 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff Michael Russo suffered bladder cancer in approximately May 2010.

d. Plaintiff  Phyllis Russo's loss of consortium claims are alleged in the ninth cause of action.

8.133   Daniel Ryan alleges as follows:

a. Plaintiff Daniel Ryan is a citizen of California.

b. Plaintiff Daniel Ryan ingested Actos between approximately December 2004 and June 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Daniel Ryan suffered bladder cancer in approximately March 2014.

d. Plaintiff  Daniel Ryan's loss of consortium claims are alleged in the ninth cause of action.

8.134   Roger Schmidtendorff and Iris Schmidtendorff allege as follows:

a. Plaintiffs Roger Schmidtendorff and Iris Schmidtendorff are citizens of Michigan.

b. Plaintiff Roger Schmidtendorff ingested Actos between approximately March 2003 and April 2007.

c. Following and as a legal and proximate result of Actos use, Plaintiff Roger Schmidtendorff suffered bladder cancer in approximately September 2005.

d. Plaintiff Iris Schmidtendorff's loss of consortium claims are alleged in the ninth cause of action.

8.135   William D. Shannon and Lillie Shannon allege as follows:

a. Plaintiffs William D. Shannon and Lillie Shannon are citizens of Texas.

b. Plaintiff William D. Shannon ingested Actos between approximately May 2006 and January 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff William D. Shannon suffered bladder cancer in approximately October 2014.

d. Plaintiff Lillie Shannon's loss of consortium claims are alleged in the ninth cause of action.

8.136   Paul Siegel alleges as follows:

a. Plaintiff Paul Siegel is a citizen of California.

b. Plaintiff Paul Siegel ingested Actos between approximately January 2004 and February 2010.

c. Following and as a legal and proximate result of Actos use, Plaintiff Paul Siegel suffered bladder cancer in approximately October 2013.

8.137   Lawrence Slutsky alleges as follows:

a. Plaintiff Lawrence Slutsky is a citizen of California.

b. Plaintiff Lawrence Slutsky ingested Actos between approximately March 2007 and March 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff Lawrence Slutsky suffered bladder cancer in approximately September 2010.

8.138   Sheila Smith and DeWayne Smith allege as follows:

a. Plaintiffs Sheila Smith and DeWayne Smith are citizens of Florida.

b. Plaintiff Sheila Smith ingested Actos between approximately January 2004 and July 2014.

c. Following and as a legal and proximate result of Actos use, Plaintiff Sheila Smith suffered bladder cancer in approximately October 2014.

d. Plaintiff DeWayne Smith's loss of consortium claims are alleged in the ninth cause of action.

8.139   Earl D. Smith alleges as follows:

a. Plaintiff Earl D. Smith is a citizen of North Carolina.

b. Plaintiff Earl D. Smith ingested Actos between approximately June 2004 and July 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff Earl D. Smith suffered bladder cancer in approximately June 2013.

8.140   Emily C. Smith alleges as follows:

a. Plaintiff Emily C. Smith is a citizen of New Hampshire.

b. Plaintiff Emily C. Smith ingested Actos between approximately January 2006 and May 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff Emily C. Smith suffered bladder cancer in approximately March 2010.

8.141   Edward Soleimani alleges as follows:

a. Plaintiff Edward Soleimani is a citizen of New Jersey.

b. Plaintiff Edward Soleimani ingested Actos between approximately March 2008 and March 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Edward Soleimani suffered bladder cancer in approximately February 2014.

8.142   Arthur Stansfield and Annie Stansfield allege as follows:

a. Plaintiffs Arthur Stansfield and Annie Stansfield are citizens of Massachusetts.

b. Plaintiff Arthur Stansfield ingested Actos between approximately December 2007 and May 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Arthur Stansfield suffered bladder cancer in approximately October 2013.

d. Plaintiff Annie Stansfield's loss of consortium claims are alleged in the ninth cause of action.

8.143   Robert Stone and Nancy Stone allege as follows:

a. Plaintiffs Robert Stone and Nancy Stone are citizens of New York.

b. Plaintiff Robert Stone ingested Actos between approximately July 2010 and June 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Robert Stone suffered bladder cancer in approximately July 2012.

d. Plaintiff Nancy Stone's loss of consortium claims are alleged in the ninth cause of action.

8.144   David Tafe and Christine Tafe allege as follows:

a. Plaintiffs David Tafe and Christine Tafe are citizens of New York.

b. Plaintiff David Tafe ingested Actos between approximately June 2000 and October 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff David Tafe suffered bladder cancer in approximately March 2013.

d. Plaintiff Christine Tate's loss of consortium claims are alleged in the ninth cause of action.

8.145   Jerry Tagliente alleges as follows:

a. Plaintiff Jerry Tagliente is a citizen of New York.

b. Plaintiff Jerry Tagliente ingested Actos between approximately December 2003 and October 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Jerry Tagliente suffered bladder cancer in approximately November 2006.

8.146   Homer Thrift, Jr. and Shirley Thrift allege as follows:

a. Plaintiffs Homer Thrift, Jr. and Shirley Thrift are citizens of Arizona.

b. Plaintiff Homer Thrift, Jr. ingested Actos between approximately January 2000 and December 2007.

c. Following and as a legal and proximate result of Actos use, Plaintiff Homer Thrift, Jr. suffered bladder cancer in approximately June 2006.

d. Plaintiff Shirley Thrift's loss of consortium claims are alleged in the ninth cause of action.

8.147   Ray Tozer, Sr. alleges as follows:

a. Plaintiff Ray Tozer, Sr. is a citizen of North Dakota.

b. Plaintiff Ray Tozer, Sr. ingested Actos between approximately January 2002 and December 2004.

c. Following and as a legal and proximate result of Actos use, Plaintiff Ray Tozer, Sr. suffered bladder cancer in approximately January 2003.

8.148   Louis Tranzillo and Catherine Tranzillo allege as follows:

a. Plaintiffs Louis Tranzillo and Catherine Tranzillo are citizens of North Carolina.

b. Plaintiff Louis Tranzillo ingested Actos between approximately January 2005 and May 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Louis Tranzillo suffered bladder cancer in approximately May 2012.

d. Plaintiff Catherine Tranzillo's loss of consortium claims are alleged in the ninth cause of action.

8.149   Kathleen Truesdell alleges as follows:

a. Plaintiff Kathleen Truesdell is a citizen of North Carolina.

b. Plaintiff Kathleen Truesdell ingested Actos between approximately January 2008 and December 2013.

c. Following and as a legal and proximate result of Actos use, Plaintiff Kathleen Truesdell suffered bladder cancer in approximately January 2009.

8.150   Giulio Viti and Nancy Viti allege as follows:

a. Plaintiffs Giulio Viti and Nancy Viti are citizens of New York.

b. Plaintiff Giulio Viti ingested Actos between approximately January 2000 and October 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Giulio Viti suffered bladder cancer in approximately May 2002.

d. Plaintiff Nancy Viti's loss of consortium claims are alleged in the ninth cause of action.

8.151   Fred Volpe and Sara Volpe allege as follows:

a. Plaintiffs Fred Volpe and Sara Volpe are citizens of Pennsylvania.

b. Plaintiff Fred Volpe ingested Actos between approximately January 2008 and January 2009.

c. Following and as a legal and proximate result of Actos use, Plaintiff Fred Volpe suffered bladder cancer in approximately January 2009.

d. Plaintiff Sara Volpe's loss of consortium claims are alleged in the ninth cause of action.

8.152   William Walton alleges as follows:

a. Plaintiff William Walton is a citizen of Florida.

b. Plaintiff William Walton ingested Actos between approximately January 2002 and December 2008.

c. Following and as a legal and proximate result of Actos use, Plaintiff William Walton suffered bladder cancer in approximately February 2007.

8.153   Lavada Wilson alleges as follows:

a. Plaintiff Lavada Wilson is a citizen of Arkansas.

b. Plaintiff Lavada Wilson ingested Actos between approximately January 2006 and December 2012.

c. Following and as a legal and proximate result of Actos use, Plaintiff Lavada Wilson suffered bladder cancer in approximately July 2014.

8.154   Margaret Wyman alleges as follows:

a. Plaintiff Margaret Wyman is a citizen of Nebraska.

b. Plaintiff Margaret Wyman ingested Actos between approximately March 2001 and January 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Margaret Wyman suffered bladder cancer in approximately July 2013.

8.155   Norville Zackery and Carol Zackery allege as follows:

a. Plaintiffs Norville Zackery and Carol Zackery are citizens of Kentucky.

b. Plaintiff Norville Zackery ingested Actos between approximately January 2010 and January 2011.

c. Following and as a legal and proximate result of Actos use, Plaintiff Norville Zackery suffered bladder cancer in approximately July 2014.

d. Plaintiff Carol Zackery's loss of consortium claims are alleged in the ninth cause of action.

## PARTY DEFENDANTS AND PERSONAL JURISDICTION

9.      Upon information and belief, Defendant, TAKEDA PHARMACEUTICALS U.S.A. INC., (f/k/a TAKEDA PHARMACEUTICALS NORTH AMERICA, INC.) is a Delaware corporation, having a principal place of business at One Takeda Parkway, Deerfield, Illinois  60015.  As part of its business, TAKEDA PHARMACEUTICALS U.S.A. INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

10.      Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, is a Japanese corporation having a principal place of business at 1-1, Doshomachi 4-chome, Chuoku, Osaka, Japan. As part of its business, TAKEDA PHARMACEUTICAL COMPANY LIMITED is involved in the research, development, sales, and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

11.      Defendant, TAKEDA PHARMACEUTICALS AMERICA INC., is a Delaware corporation, having a principal place of business at One Takeda Parkway, Deerfield, Illinois  60015. As part of its business, TAKEDA PHARMACEUTICALS AMERICA INC. is

involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

12.     Defendant, TAKEDA PHARMACEUTICALS INTERNATIONAL INC., is an Illinois corporation, having a principal place of business at One Takeda Parkway, Deerfield, IL 60015. As part of its business TAKEDA PHARMACEUTICALS INTERNATIONAL INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

13.     Defendant, TAKEDA DEVELOPMENT CENTER AMERICAS INC., (f/k/a TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC.), is an Illinois corporation, having a principal place of business at One Takeda Parkway, Deerfield, IL 60015. As part of its business TAKEDA DEVELOPMENT CENTER AMERICAS INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

14.     Defendant ELI LILLY AND COMPANY is an Indiana corporation, having a principal place of business at Lilly Corporate Center, Indianapolis, Indiana 46285. As part of its business ELI LILLY AND COMPANY is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

15.     Upon information and belief, at relevant times, Defendants were engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce and into the States of Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma,

Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia either directly or indirectly through third parties or related entities, its products, including Actos and pioglitazone hydrochloride.

16.     At relevant times, Defendants conducted regular and sustained business and engaged in substantial commerce and business activity in the States of Alabama,  Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia which included but was not limited to selling, marketing and distributing its products including Actos and pioglitazone hydrochloride in Alabama,  Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia.

17.     Upon information and belief, at all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States of America including the States of Alabama,    Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia and Defendants derived and derive substantial revenue from interstate commerce.

18.     Upon information and belief, Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, is a company domiciled in Japan and is the parent/holding company of Defendants, TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., and TAKEDA DEVELOPMENT CENTER AMERICAS, INC.,

19.     Upon information and belief, at all relevant times, Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, exercised and exercises dominion and control over Defendants, TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., and   TAKEDA DEVELOPMENT CENTER AMERICAS, INC. (collectively "Takeda subsidiaries").

20.     Upon information and belief, at all relevant times, Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, expected or should have expected that its acts would have consequences within the United States of America and the States of Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia derived and derive substantial revenue from interstate commerce.

21.     Upon information and belief, at all relevant times, Defendants, including Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, have transacted and conducted business in the States of Alabama,   Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine,

Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia and/or contracted to supply goods and services within the States of Alabama,  Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia and these causes of action have arisen from same.

22.     Upon information and belief, at all relevant times, Defendants, including Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, committed a tortious act within the States of Alabama,  Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia causing injury within the States of Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia out of which act(s) these causes of action arise.

23.     Upon information and belief, at all relevant times, Defendants, including Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, committed tortious act(s)

within the States of Alabama,  Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia out of which act(s) these causes of action arise.

24.     Upon information and belief, at all relevant times, Defendant ELI LILLY AND COMPANY expected or should have expected that its acts would have consequences within the United States of America and the States of Alabama,  Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia derived and derive substantial revenue from interstate commerce.

25.     Upon information and belief, at all relevant times, Defendants, including Defendant ELI LILLY AND COMPANY have transacted and conducted business in the States of Alabama,  Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginiaand/or contracted to supply goods and services within the States of Alabama,  Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio,

58

Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia and these causes of action have arisen from same.

26.     Upon information and belief, at all relevant times, Defendants, including Defendant ELI LILLY AND COMPANY committed a tortious act without the States of Alabama,  Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia causing injury within the States of Alabama,  Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia out of which act(s) these causes of action arise.

27.     Upon information and belief, at all relevant times, Defendants, including Defendant ELI LILLY AND COMPANY committed tortious act(s) within the States of Alabama,  Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maine, Michigan, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia out of which act(s) these causes of action arise.

## FACTUAL BACKGROUND

### I.     TAKEDA JOINT VENTURE/AGENCY/ALTER EGO

28.     At all relevant times, Defendants, TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED (collectively "TAKEDA"), acted as joint venturer, partner, agent, employee, representative, and/or alter ego of each of the other defendants in the design, research, manufacture, testing, advertising, promotion, marketing, sale, and distribution of Actos in the United States (as well as in Europe and Asia).

29.     In the process of doing so, TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED, collectively and individually, recognized that Actos increases an individual's risk of development of bladder cancer and failed to pass that information on to patients, physicians, or regulatory agencies in an adequate manner.

30.     In carrying out the actions alleged herein, each Defendant was acting within the scope of its authority as such.

31.     Upon information and belief, at all relevant times, Takeda subsidiaries, as subsidiary corporations, divisions, and joint venturers, were authorized to act on behalf of and answered solely to the direction and authority of executives of Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED in Japan.

32.     Upon information and belief, at all relevant times, TAKEDA PHARMACEUTICAL COMPANY LIMITED, as parent/holding company and joint venturer with Takeda subsidiaries, as subsidiary corporations, divisions, and joint venturers, were

organized and structured to maximize profits for TAKEDA and to enable TAKEDA to satisfy the regulatory requirements of different regions of the world.

33.     Defendants, TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED by representing TAKEDA's interests in dealings with regulatory agencies and other business entities necessary for the successful manufacture, marketing, sale, and distribution of Actos, including, inter alia, pharmacovigilance review, preparation of labeling submissions and filings, and engaging in labeling negotiations for Actos.

34.     Defendants, TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED, shared common human resources, financial capital, knowledge, and technical skill related to the design, research, manufacture, testing, advertising, promotion, marketing, sale, and distribution of Actos.

35.     Among other conduct relevant herein,

   a.     TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED acted as joint venture partners, engaged in an enterprise to gain the approval and subsequent sale of Actos in the United States, which each company contributing their own assets, money, skills, knowledge, resources, and efforts in such endeavor, with each company having joint management responsibilities and some control over the venture with each company's success and failures being dependent upon the success and failures of the sale of Actos, including the sharing of losses and profits.

b.      TAKEDA PHARMACEUTICALS U.S.A., INC. and TAKEDA DEVELOPMENT CENTER AMERICAS, INC. acted as agents for TAKEDA PHARMACEUTICAL COMPANY LIMITED and for one another in the research and development of Actos in learning of the potential risk of Actos, including bladder cancer and in failing to convey adequate warnings regarding the risk of bladder cancer and Actos.

c.      TAKEDA PHARMACEUTICAL INTERNATIONAL, INC., in its role as agent and facilitator for TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED, as joint venture partners with all Takeda defendants, and based on its involvement in the research and development of Actos, either knew or should have known of the potential risk of Actos, including bladder cancer, and therefore, had a duty to ensure that the warnings for Actos were adequate to warn Plaintiff's physicians of the potential risk.

d.      TAKEDA PHARMACEUTICALS AMERICA, INC. as joint venture partners with all Takeda defendants, and based on its involvement in the sold, marketing, sales, and distribution of Actos either knew or should have known of the potential risk of Actos, including bladder cancer, and therefore, had a duty to ensure that the warnings for Actos were adequate to warn Plaintiff's physicians of the potential risk.

36.     In carrying out their joint venture with regard to Actos, Defendants, TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED, agreed to share in the profits and/or losses arising from the manufacture, marketing, sale, and/or distribution of Actos.

37.     In carrying out their joint venture with regard to Actos, Defendants, TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED, each exercised a degree of management or control over the joint

venture.

38.     Defendants, TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED, shared employees and coordinated with each other in furtherance of the success of Actos as the most important and profitable drug in Takeda's portfolio of products.  Takeda had a single chain of command that culminated with the leadership in TAKEDA PHARMACEUTICAL COMPANY LIMITED.

39.     Defendants, TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED, were agents of each other and bound by the acts of each other in carrying out the design, research, manufacture, testing, advertising, promotion, marketing, sale, and distribution of Actos.  The acts of each joint venturer in furtherance of the success of Actos were conducted in the usual course of business and with the authority of their respective joint venturers.

40.     As a result of the conduct described here and below, Defendants, TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED, are jointly and severally liable for every act or omission that is chargeable to the joint venture.

41.     Upon information and belief, at all relevant times, TAKEDA acted as a single entity with regards to its pharmaceutical business, including Actos.

42.     Upon information and belief, at all relevant times, TAKEDA had a unity of

interest in that:

> a.     TAKEDA PHARMACEUTICAL COMPANY LIMITED was either the direct or indirect owner of substantially all the stock or other ownership interests of the Takeda subsidiaries. TAKEDA PHARMACEUTICAL COMPANY LIMITED was not merely a passive investor. Rather, TAKEDA PHARMACEUTICAL COMPANY LIMITED managed the Takeda subsidiaries as a single business enterprise.

> b.     TAKEDA PHARMACEUTICAL COMPANY LIMITED exercised dominion and control over the day-to-day operations and business of the Takeda subsidiaries.

> c.     TAKEDA shared a single Board of Directors.

> d.     Moreover, that Takeda subsidiaries were not treated as separate entities is evident from the fact that TAKEDA held intercompany board meetings to made decisions and carry out operations for Actos.

> e.     Budgets, employee bonuses, and the delegation of resources were shared between the TAKEDA companies.

> f.     Upon information and belief, funds were put in and taken out of the Takeda subsidiaries for the benefit of the Japanese parent company's use rather than the corporate purposes of the other Defendants, leaving some or all of the Takeda subsidiary Defendants with an inadequate level of assets.

> g.     Among other examples of involvement in the day-to-day operations of the Takeda subsidiaries, on information and belief, senior TAKEDA PHARMACEUTICAL COMPANY LIMITED personnel and officers were instrumental in interactions with the Food & Drug Administration with regard to Actos.

> h.     TAKEDA sought to ensure the success of Actos as Takeda's most profitable drug, and suppressed scientific and medical information or data that could negatively impact Actos' financial success for TAKEDA, to Plaintiff's detriment.

43.     Based on the disregard of corporate formalities discussed herein, TAKEDA

defrauded the public by concealing the nature of the single enterprise and misrepresenting the

corporate structure, such that inequitable results would arise if alter ego liability is not imposed.

44.     As a result of the conduct described here and below, the Takeda subsidiaries were agents and alter egos of TAKEDA PHARMACEUTICAL COMPANY LIMITED.

**II.     TAKEDA-ELI LILLY JOINT VENTURE/AGENCY**

45.     Upon information and belief, prior to the time that Actos reached the market in 1999, Defendants ELI LILLY and TAKEDA PHARMACEUTICALS AMERICA, Inc., entered into a "Co-Promotion Agreement"  to act as distributor and "co-promoter" of Actos for profit in the United States.  The Co-Promotion Agreement provided for an elaborate governance structure, designed to give each company an equal say in running the joint venture.

46.     In the process of doing so, Defendants ELI LILLY and TAKEDA PHARMACEUTICALS AMERICA, Inc. collectively and individually, recognized that Actos increases an individual's risk of development of bladder cancer and failed to pass that information on to patients, physicians, or regulatory agencies in an adequate manner.

47.     In carrying out the actions alleged herein, each Defendant was acting within the scope of its authority as such.

48.     Pursuant to the "Co-Promotion Agreement," Defendants, ELI LILLY and TAKEDA PHARMACEUTICALS AMERICA, Inc. agreed to share in the profits and losses of marketing Actos.  The agreement was to last for a period of seven years after the launch of Actos.  Moreover, ELI LILLY was to be paid a residual "co-promotion" fee on sales of Actos in the U.S. for a period of time following the expiration of the term of the agreement.

49.     Pursuant to the "Co-Promotion Agreement," ELI LILLY and TAKEDA PHARMACEUTICALS AMERICA, Inc. agreed to undertake the promotion of Actos together. Significantly, Takeda's and Eli Lilly's names and/or logos would appear with equal prominence on the product, sample packages, and product label as well as on any promotional material.

50.     As a result of the agreement, ELI LILLY was substantially involved in the distribution chain for Actos and for ensuring that Actos was placed into the stream of commerce throughout the United States.

51.     The joint venture to promote Actos was much broader than traditional marketing or advertising.  Defendant ELI LILLY's role was not limited to detailing physicians. Rather, ELI LILLY was involved in the broader overall marketing and promotion of Actos, including activities not traditionally associated with marketing, including: overseeing customer medical services; participation in clinical studies; participation in regulatory issues; exchange of information related to Adverse Events, Device Adverse Events; and post-marketing surveillance; and communicated with the FDA that about label warnings.

52.     As part of the non-traditional marketing activities, ELI LILLY was also involved in generating ostensible scientific materials about Actos, which despite the appearance of independence, were designed to persuade doctors to prescribe Actos.  ELI LILLY also explicitly agreed not to use data from clinical studies that would negatively affect sales of Actos, which amounted to an agreement to hide from the public and the medical community results of clinical studies that showed problems with Actos.

53.     Upon information and belief, ELI LILLY and TAKEDA PHARMACEUTICALS AMERICA, Inc. worked together to suppress safety and risk information about Actos and bladder cancer from healthcare providers and their patients; to persuade the medical community that Actos would lower cardiovascular risks in diabetes patients, even though their jointly-conducted PROactive trial had not supported that hypothesis.

54.     Pursuant to the "Co-Promotion Agreement," ELI LILLY and TAKEDA PHARMACEUTICALS AMERICA, Inc. were full partners in the promotion of Actos.  As set

forth above, the "promotional activities" encompassed clinical trials, publishing, communications with FDA, and tracking information about adverse events, in particular with respect to bladder cancer.

55.     In carrying out the actions alleged herein, each Defendant was acting within the scope of its authority as such.

56.     As a result of the conduct described here and below, Defendants, ELI LILLY and TAKEDA PHARMACEUTICALS AMERICA, Inc., are jointly and severally liable for every act or omission that is chargeable to the joint venture.

### III.    DEVELOPMENT OF ACTOS

57.     Actos received FDA approval in 1999 to treat Type 2 Diabetes Mellitus.

58.     At all relevant times, Defendants, directly or through their agents, designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, Actos and pioglitazone hydrochloride for treatment of Type 2 Diabetes Mellitus.

59.     Actos received FDA approval in 1999 to treat Type 2 Diabetes Mellitus.

60.     Actos was jointly launched by Takeda North America and Eli Lilly in 1999.

61.     On April 20, 2006, Takeda Limited announced the conclusion of its collaboration in the United States between Takeda North America and Eli Lilly to promote and market Actos, a partnership Takeda Limited described as "a great success" and "mutually beneficial to both companies."

62.     Prior to applying for and obtaining FDA approval to market Actos, Defendants knew or should have known that Actos use in humans was associated with and/or could cause heart damage.

63.     Numerous studies have examined the effect of Actos on congestive heart

failure and have clearly shown that Actos causes congestive heart failure.  Defendants failed to include information regarding Actos and congestive heart failure in its label until it was forced to do so by the FDA in 2007.  Despite the warning, Defendants have promoted and continued to promote Actos as cardioprotective.

64.     Prior to applying for and obtaining FDA approval for Actos, Defendants knew or should have known that Actos use in humans was associated with and/or would cause the induction of bladder cancer.

65.     Defendants possessed pre-clinical scientific studies including animal evidence, which evidence Defendants knew or should have known was a signal that bladder cancer risk needed to be further tested and studied before placing Actos on the market.

66.     Despite bladder cancer findings in animal model carcinogenicity studies and other pre-clinical evidence, Defendants failed to adequately conduct complete and proper testing of Actos prior to filing its New Drug Application of Actos.

67.     It is now known that additional bladder cancer evidence from human clinical trials also became known to Defendants in the early 2000's.

68.     In 2005, the results of the PROactive (PROspective PioglitAzone Clinical Trial In MacroVascular Events) three-year study were published.  PROactive prospectively looked at the impact of Actos use in total mortality and macrovascular morbidity in high risk patients.  Dormandy J.A., et al., Secondary Prevention of Macrovascular Events in Patients with Type 2 Diabetes in the PROactive Study (PROspective PioglitAzone Clinical Trial In MacroVascular Events): a Randomised Controlled Trial, Lancet, 266:1279-1286 (2005) ("Dormandy paper").

69.     The PROactive study was designed to evaluate cardiovascular events and

outcomes.  However, the study demonstrated a higher percentage of bladder cancer cases in patients receiving Actos versus comparators.

70.      During the course of monitoring the study, the researchers and Defendants became aware that there were a statistically significant demonstrated higher percentage of bladder cancer cases in patients receiving Actos versus comparators.

71.      Neither during the study, nor in the actual final Dormandy paper, did the researchers or Defendants publish these statistically significant increases of bladder cancer. Rather, Defendants and researchers intentionally skewed the study findings to obscure the statistical significance of the bladder cancer diagnoses.

72.      Defendants willfully, wantonly and with malice withheld the knowledge of the increased risk of bladder cancer in users of Actos seen in the PROactive study.

73.      From the date of approval to market Actos, Defendants made, distributed, marketed and sold Actos without adequate warning to Plaintiffs' treating physicians or plaintiffs that Actos was associated with and/or could cause bladder cancer and presented a risk of bladder cancer in patients who used it and without adequate warning that Defendants had not adequately conducted complete and proper testing and studies of Actos with regard to carcinogenicity.

74.      For over 10 years and to date, Defendants concealed and failed to completely disclose its knowledge that Actos was associated with or could cause bladder cancer or its knowledge that it had failed to fully study and test regarding that risk.

75.      Defendants' failure to disclose information that they possessed regarding the failure to adequately study and test Actos for bladder cancer risk further rendered warnings for this medication inadequate.

76.      Upon information and belief, Defendants ignored the association between the

use of Actos and pioglitazone hydrochloride and the risk of developing bladder cancer.

77.     On June 7, 2011, the Caisse nationale de l'assurance maladie, at the request of the French regulatory agency, published a report concluding that there is a statistically significant association between exposure to pioglitazone (Actos) and bladder cancer and that the risk increased with exposure longer than one year.

78.     On June 9, 2011, the European Medicine Agency suspended the use of Actos in light of the French Marketing Authorization Committee and the French National Pharmacovigilance Committee's findings regarding the increased risk of bladder cancer.

79.     On June 10, 2011, Germany's Federal Institute for Drugs and Medical Devices suspended the use of Actos.

80.     On June 15, 2011, the FDA informed the public that use of the diabetes medication Actos for more than one year may be associated with an increased risk of bladder cancer. The Actos label was then changed to reflect this information in the Warnings and Precautions section as well as the patient Medication Guide to include information regarding the risk of bladder cancer.

81.     FDA further recommended on June 15, 2011 that healthcare physicians discontinue pioglitazone use in patients with active bladder cancer.

82.     Despite the FDA finding that Actos is linked to a statistically significant increase in risk for developing bladder cancer, Robert Spanheimer, Vice President of Medical and Scientific Affairs for Takeda Limited, claimed to Reuters that the Kaiser Permanente study does not show that Actos users are at an increased risk of bladder cancer or other cancers.

83.     On June 17, 2011, Health Canada Press Release indicated that in light of studies suggesting an increased risk of bladder cancer with the diabetes drug pioglitazone, as

well as actions taken by other regulatory agencies, Health Canada informed healthcare professionals and Canadians that it is undertaking a review of the drug's status.

84.     As a proximate result of Defendants' conduct, Plaintiffs' physicians prescribed Actos to said Plaintiffs and said Plaintiffs used Actos.

85.     As result of using Defendants' Actos, Plaintiffs were caused to suffer bodily injury including cancerous tumors in their bladder and was thus caused to sustain severe and permanent personal injuries, pain, suffering, and mental anguish.

86.     The injuries and damages sustained by Plaintiffs were caused or substantially contributed to by Defendants' Actos and the Defendants' wrongful conduct.

87.     The product warnings for Actos in effect during the time period Plaintiffs used Actos were vague, incomplete or otherwise inadequate, both substantively and graphically, to alert treating physicians as well as Plaintiffs of the bladder cancer risk associated with this drug.

88.     The Defendants did not provide adequate warnings to Plaintiffs' doctors, Plaintiffs, the health care community and the general public about the increased risk of serious adverse events that are described herein.

89.     Had Plaintiffs' physicians and Plaintiffs been adequately warned of the potential life-threatening side effects of the Defendants' Actos, Plaintiffs' physicians would have changed the manner in which they prescribed Actos, including but not limited to, passing on the risks to the Plaintiffs and discussing the risks with Plaintiffs; Plaintiffs would not have purchased or taken Actos and would have chosen to request other treatments or prescription medications had they been informed of the risks of Actos.

90.     By reason of the foregoing, Plaintiffs have developed serious and dangerous

side effects including bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above and other named health consequences.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

91.      The running of any statute of limitation has been tolled by reason of the Defendants' conduct.   The Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiffs' treating physicians the true risks associated with Actos and pioglitazone hydrochloride.

92.      As a result of the Defendants' actions, Plaintiffs and Plaintiffs' treating physicians were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

93.      Furthermore, the Defendants are estopped from relying on any statute of limitations because of their concealment of the truth, quality and nature of Actos and pioglitazone hydrochloride.  The Defendants were under a duty to disclose the true character, quality and nature of Actos because this was non-public information that the Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to the Plaintiffs, their medical providers, and/or to their health facilities.

94.      Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the

known or reasonably known risks.  Plaintiffs and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on Defendants' representations.

**PLAINTIFFS ARE ENTITLED TO A TOLLING**
**OF THE STATUTE OF LIMITATIONS**
**PURSUANT TO CPLR § 214-C**

95.     Plaintiffs' injuries occurred within three years of the date hereof and/or Plaintiffs discovered the cause of their injuries less than five years after discovery of the injury was discovered or when the injury, with reasonable diligence, should have been discovered and the technical, scientific or medical knowledge and information sufficient to ascertain the cause of Plaintiffs' injuries had not been discovered, identified or determined prior to the expiration of the period within which the action could have been brought.

**FIRST CAUSE OF ACTION**
**AS AGAINST THE DEFENDANTS**
**(NEGLIGENCE)**

96.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

97.     Defendants had a duty to Plaintiffs to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Actos and pioglitazone hydrochloride into the stream of commerce, including a duty to assure that Actos and pioglitazone hydrochloride would not cause users to suffer unreasonable, dangerous side effects such as cancer or heart damage.

98.     Defendants failed to exercise ordinary care and/or were reckless in designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Actos into interstate commerce in that

Defendants knew or should have known that using Actos caused a risk of unreasonable, dangerous side effects, including bladder cancer.

99.     Despite the fact that Defendants knew or should have known that Actos was associated with and/or caused bladder cancer, Defendants continued to market, manufacture, distribute and/or sell Actos to consumers, including the Plaintiffs.

100.    Defendants knew or should have known that consumers such as the Plaintiffs would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

101.    Defendants' negligence and/or recklessness was the proximate cause of Plaintiffs' injuries, harm and economic loss which they suffered and will continue to suffer.

102.    Defendants' acts were wanton, malicious, and/or recklessness and were the proximate cause of Plaintiffs' injuries, harm and economic loss that they suffered and will continue to suffer.

103.    As a result Defendants' negligence and/or recklessness, the Plaintiffs were caused to suffer serious and dangerous side effects including bladder cancer, as well as other severe and personal injuries that are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above.

104.    As a result of the foregoing acts and omissions the Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiffs are informed, believe, and further allege that Plaintiffs will in the future be

required to obtain further medical and/or hospital care, attention, and services.

105. By reason of the foregoing, Plaintiffs' demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

106. The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.

**SECOND CAUSE OF ACTION
AS AGAINST DEFENDANTS
(STRICT PRODUCTS LIABILITY - FAILURE TO WARN)**

107. Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

108. Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, marketed, and/or introduced Actos into the stream of commerce, and in the course of same, directly advertised or marketed Actos and pioglitazone hydrochloride to consumers or persons responsible for consumers, and therefore, had a duty to both the Plaintiffs directly and Plaintiffs' physicians to warn of risks associated with the use of the Product.

109. Defendants had a duty to warn of adverse drug reactions, which they know or have reason to know can be caused by the use of Actos and pioglitazone hydrochloride and/or are associated with the use of Actos and pioglitazone hydrochloride.

110. The Actos and pioglitazone hydrochloride manufactured and/or supplied by the Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the Defendants knew or should have known of the risks of bladder cancer from

Actos use, they failed to provide adequate warnings to consumers of the product, including Plaintiffs and Plaintiffs' physicians, and continued to aggressively promote Actos.

111.     Due to the inadequate warning regarding bladder cancer, Actos was in a defective condition and unreasonably dangerous at the time that it left the control of the Defendants.

112.     Defendants failed to adequately warn Plaintiffs and Plaintiffs' treating physicians of human and animal results in preclinical studies pertaining to bladder cancer and Actos.

113.     Defendants' failure to adequately warn Plaintiffs and Plaintiffs' treating physicians of a bladder cancer risk prevented Plaintiffs' treating physicians and Plaintiffs from correctly and fully evaluating the risks and benefits of Actos and pioglitazone hydrochloride.

114.     Had Plaintiffs' physicians and Plaintiffs been adequately warned of the potential life-threatening side effects of the Defendants' Actos, Plaintiffs' physicians would have changed the manner in which they prescribed Actos, including but not limited to, passing on the risks to the Plaintiffs and discussing the risks with Plaintiffs at the time of prescription and throughout the physician's treatment period of Plaintiffs; Plaintiffs would not have purchased or taken Actos and would have chosen to request other treatments or prescription medications had they been informed of the risks of Actos.

115.     Upon information and belief, had Plaintiffs' treating physicians been adequately warned of the potential life-threatening side effects of the Defendants' Actos and pioglitazone hydrochloride, Plaintiffs' treating physicians would have discussed the risks of bladder cancer and Actos with the Plaintiffs, changed their manner of treatment, and/or would not have prescribed Actos.

116.     As a foreseeable and proximate result of the aforementioned wrongful acts and omissions of Defendants, Plaintiffs were caused to suffer from the aforementioned injuries and damages.

117.     By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

118.     The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.

**THIRD CAUSE OF ACTION**
**AS AGAINST THE DEFENDANTS**
**(STRICT PRODUCTS LIABILITY - DEFECTIVE DESIGN)**

119.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

120.     Actos was expected to, and did, reach the intended consumers, handlers, and persons coming into contact with the product without substantial change in the condition in which it was produced, manufactured, sold, distributed, labeled, and marketed by Defendants.

121.     At all times relevant, Actos was manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous condition, which was dangerous for use by the public, and, in particular, by Plaintiffs.

122.     Actos and pioglitazone hydrochloride as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants was defective in design and formulation in that when it left the hands of the

manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with the design and formulation of Actos.

123.     Actos and pioglitazone hydrochloride as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants was defective in design and formulation, because when it left the hands of Defendants' manufacturers and suppliers it was unreasonably dangerous and was also more dangerous than the ordinary consumer would expect.

124.     At all times herein mentioned, Actos and pioglitazone hydrochloride was in a defective condition and was unsafe, and Defendants knew and had reason to know that the product was defective and inherently unsafe, especially when Actos was used in a form and manner instructed and provided by Defendants.

125.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, common, intended use.

126.     At the time of Plaintiffs' use of Actos, it was being used for its intended purpose, and in a manner normally intended, namely for the treatment of Type 2 Diabetes Mellitus.

127.     Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed a defective product that caused an unreasonable risk to the health of consumers, and to Plaintiffs in particular, and Defendants are therefore strictly liable for the injuries and damages sustained by Plaintiffs.

128.     At the time Defendants' product left their control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Actos.  This was

demonstrated by the existence of other Type 2 Diabetes Mellitus medications which had a more established safety profile and a considerably lower risk profile.

129.     Plaintiffs could not, by the reasonable exercise of care, have discovered Actos' defects and perceived its danger.

130.     The defects in Defendants' product were substantial and contributing factors in causing Plaintiffs' injuries.

131.     As a foreseeable, direct, and proximate result of the aforementioned wrongful acts and omissions of Defendants, Plaintiffs were caused to suffer from the aforementioned injuries and damages.

132.     Due to the unreasonably dangerous condition of Actos, Defendants are strictly liable to Plaintiffs.

133.     By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

134.     The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.

### FOURTH CAUSE OF ACTION
### AS AGAINST THE DEFENDANTS
### (BREACH OF EXPRESS WARRANTY)

135.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

136.     Defendants expressly warranted that Actos was safe for its intended use and as otherwise described in this complaint.  Actos did not conform to these express representations,

including, but not limited to, the representation that it was well accepted in patient and animal studies, the representation that it was safe, and the representation that it did not have high and/or unacceptable levels of life-threatening side effects like bladder cancer, that it would improve health, maintain health, and potentially prolong life.

137.     The express warranties represented by the Defendants were a part of the basis for Plaintiffs' use of Actos and Plaintiffs relied on these warranties in deciding to use Actos.

138.     At the time of the making of the express warranties, the Defendants had knowledge of the purpose for which the Actos and pioglitazone hydrochloride was to be used, and warranted same to be in all respects safe, effective and proper for such purpose.

139.     Actos does not conform to these express representations because Actos is not safe or effective and may produce serious side effects, including among other things bladder cancer, degrading Plaintiffs' health, and shrinking their life expectancy.

140.     As a result of the foregoing breach of express warranty the Plaintiffs were caused to suffer bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above and other named health consequences.

141.     By reason of the foregoing, Plaintiffs have been severely and permanently injured, and will require more constant and continuous medical monitoring and treatment than prior to their use of Defendants' Actos drug.

142.     As a result of the foregoing acts and omissions the Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiffs are informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

143.     By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

144.     The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.

**FIFTH CAUSE OF ACTION**
**AS AGAINST THE DEFENDANTS**
**(BREACH OF IMPLIED WARRANTY**
**FOR A PARTICULAR PURPOSE)**

145.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

146.     At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos and pioglitazone hydrochloride, to treat Type 2 Diabetes Mellitus.

147.     The Defendants impliedly represented and warranted to the users of Actos that Actos was safe and fit for the particular purpose for which said product was to be used, namely treating diabetes, improving health, maintaining health, and potentially prolonging life.

148.     These representations and warranties aforementioned were false, misleading, and inaccurate in that Actos and pioglitazone hydrochloride were unsafe, degraded Plaintiffs' health and shortened their life expectancy.

149.     Plaintiffs relied on the implied warranty of fitness for a particular use and purpose.

150.     Plaintiffs reasonably relied upon the skill and judgment of Defendants as to whether Actos was safe and fit for its intended use.

151.     Actos and pioglitazone hydrochloride were injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

152.     Defendants breached the aforesaid implied warranty, as their drug Actos was not fit for its intended purposes and uses.

153.     As a result of the foregoing breach of warranty, the Plaintiffs were caused to suffer serious and dangerous side effects including bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above and other named health consequences.

154.     As a result of the foregoing acts and omissions, the Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiffs are informed, and believe, and further allege that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

155.     By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of

$75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

156.     The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.

**SIXTH CAUSE OF ACTION AS
AGAINST THE DEFENDANTS
(BREACH OF IMPLIED WARRANTY
OF MERCHANTABILITY)**

157.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

158.     Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos and pioglitazone hydrochloride, to treat Type 2 Diabetes Mellitus.

159.     Defendants marketed, sold and distributed Actos and knew and promoted the use for which Actos was being used by Plaintiffs and impliedly warranted to Plaintiffs that Actos was of merchantable quality and fit for the ordinary purpose for which it was intended, namely treating diabetes, improving health, maintaining health, and potentially prolonging life.

160.     These representations and warranties aforementioned were false, misleading, and inaccurate in that Actos and pioglitazone hydrochloride were unsafe, degraded Plaintiffs' health and shortened their life expectancy.

161.     Plaintiffs reasonably relied on the skill, expertise and judgment of the Defendants and its representations as to the fact that Actos was of merchantable quality.

162.     The Actos and pioglitazone hydrochloride manufactured and supplied by the Defendants was not of merchantable quality, as warranted by the Defendants in that the drug had

dangerous and life threatening side effects and was thus not fit for the ordinary purpose for which it was intended.

163.     As a direct and proximate result of the foregoing, Plaintiffs were caused bodily injury, pain and suffering and economic loss.

164.     As a result of the foregoing acts and omissions, the Plaintiffs were caused to suffer serious and dangerous side effects including bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above and other named health consequences.

165.     As a result of the foregoing acts and omissions the Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiffs are informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

166.     By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

167.     By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that might otherwise have jurisdiction.

168.     The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.

### SEVENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (FRAUD AND FRAUDULENT CONCEALMENT)

169.     Plaintiffs reallege and repeat those paragraphs above as if set forth fully herein.

170.     Defendants made material representations and material omissions and/or concealments to Plaintiffs, their treating physicians, to the medical and healthcare community at large, and to the general public regarding the safety and/or efficacy of Actos.

171.     Defendants made material representations by using written or verbal communications, advertisements, drug packaging and labeling, and/or statements made by Defendants' agents.  These representations were intended to promote and/or support Actos, including, but not limited to, representations of the following effect:

        a.     That Actos poses no statistically significant risk of cancer to the urinary tract and/or bladder in humans.

        b.     That Actos is a safe and effective drug for use in type 2 Diabetics;

        c.     That Actos was a safer and more effective drug than other type 2 Diabetes drugs or treatments;

        d.     That Actos has significant or superior health benefits, especially as compared to other drugs, including but not limited to, superior lipid profile benefits, superior organ and tissue benefits, superior blood sugar control, and/or significant reduced risk for heart-related adverse events;

        e.     That Actos had a favorable safety profile, and had fewer adverse health and side effects than were known or should have been known by Defendants;

172.     Defendants made these material representations, which also included omissions of material fact, to the medical and healthcare community at large, the general public,

to Plaintiffs' medical or healthcare provider(s), and/or to Plaintiffs with intent to induce medical and healthcare providers and type 2 Diabetes patients to dispense, provide, prescribe, accept, purchase, and/or consume the drug for treatment of type 2 Diabetes.  Specifically, but not exhaustively, Defendants made false material representations and/or material omissions through the course of an aggressive sales and marketing operation that implemented false and misleading statements by sales representatives, Defendant-sponsored literature, and/or Defendant-sponsored promotional functions in order to promote and sell Actos while omitting material facts regarding the drug's dangerous side effects and adverse events, including evidence that Actos was associated with an increased risk of bladder cancer and heart damage.

173.    Defendants knew or should have known that their representations were false or misleading and/or knew that Defendants were concealing and/or omitting material information from the medical and healthcare community at large, the general public, from Plaintiffs' medical or healthcare provider(s), and/or Plaintiffs.

174.    In addition to making false and misleading material representations to the medical and healthcare community at large, the general public, Plaintiffs' medical or healthcare provider(s), and/or Plaintiffs, Defendants also fraudulently concealed and/or intentionally omitted material information, including, but not limited to, the following:

a.    That Actos was not as safe as other Forms of type 2 diabetes treatments or drugs;

b.    That the risks of adverse events, including the risk of being diagnosed with bladder cancer as a result of ingesting the drug, were higher than those with other forms of type 2 diabetes treatments;

c.    That the risks of adverse events, including the risk of being diagnosed with bladder cancer as a result of ingesting the drug, were not adequately tested and/or warned of by Defendants;

d.      That Actos was defective, and that it caused dangerous side effects, including being diagnosed with bladder cancer as a result of ingesting the drug, in a much higher and more significant rate than other forms of type 2 diabetes treatments;

e.      That patients needed to be monitored more regularly for adverse events, including bladder cancer, while using;

f.      That Actos was designed negligently;

g.      That Actos lacked sufficient warnings with regard to adverse events, including bladder cancer;

h.      That Actos was designed defectively; and

i.      That Actos was designed improperly.

175.      Defendants also actively engaged in concealing and omitting post-market data and evidence known to Defendants while Actos was on the market that indicated that Actos was associated with an increased risk of bladder cancer in humans.  Since 1999 Defendants were faced with multiple opportunities to inform the medical and healthcare community at large, the general public, Plaintiffs' medical or healthcare provider(s), and/or Plaintiffs of the risks and dangers of Actos, yet Defendants consciously and deliberately withheld, concealed, and omitted such information.  Incidents in which Defendants actively engaged in concealing and omitting post-market data and evidence include, but are not limited to:

a.      After the release of Actos onto the market, Defendants were informed that other type 2 diabetes drugs, compounds, or formulations in the same or substantially similar class of drugs as Actos were associated with an increased risk of bladder cancer, yet Defendants engaged in a course of conduct to actively ignore, separate, and or disassociate Actos from being associated with any drug, compound, or formulation with an increased risk of bladder cancer without an adequate scientific or pharmacological basis for such ignorance, separation, or disassociation;

b.      After the release of Actos onto the market, Defendants possessed facts and evidence that indicated that Actos was associated with an increased risk of bladder cancer in humans, and were faced with several opportunities, including suggestions from the Food and Drug

Administration (FDA), to revise the packaging and/or labeling of Actos to strengthen its warnings with regard to an increased risk of bladder cancer.  Not only did Defendants decline to strengthen Actos' packaging and/or labeling to inform medical and health care providers and consumers, but Defendants engaged in a false and misleading marketing and regulatory plan and/or process to aggressively combat any suggestions by regulatory and/or medical authorities that the Actos label should be revised.  Defendants' plan and/or process to combat label changes through false and misleading means was often predicated upon Defendants' concerns regarding the negative sales and marketing ramifications of a label change, as opposed to patient safety;

c.      After the release of Actos onto the market, Defendants possessed clinical data through studies, including Defendant-sponsored studies, that Actos was associated with a statistically significant increased risk of bladder cancer in humans.  After receiving this information, Defendants engaged in false and or misleading conduct and intentionally withheld, suppressed, misrepresented, and/or concealed this data from the medical and healthcare community at large, the general public, Plaintiffs' medical or healthcare provider(s), and/or Plaintiffs.

d.      Upon hearing any negative news about its competitors, such as the GlaxoSmithKline drug Avandia, Defendants conducted aggressive marketing campaigns against such competitors touting the alleged benefits of Actos over its competitor while purposefully and knowingly suppressing information about life-threatening side effects of Actos such as the increased risk of bladder cancer.

176.    Defendants had sole access to material facts concerning the defective nature of Actos and its propensity to cause serious and dangerous side effects, including bladder cancer and heart damage, to persons who used Actos, including Plaintiffs.

177.    Defendants' misrepresentations, concealments and omissions of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and to induce Plaintiffs' prescribing physicians to prescribe and/or dispense Actos and to induce Plaintiffs to purchase and consume Actos.

178.    Plaintiffs' treating physicians and Plaintiffs had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding

Actos, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiffs' treating physicians and Plaintiffs had no way to know were omitted.

179. Plaintiffs' treating physicians and Plaintiffs justifiably relied on the false and/or misleading statements made by Defendants and relied on Defendants' statements without knowledge of the falsity of the statements and the omissions of material facts contained therein. Defendants were in a position to disseminate information regarding the efficacy and safety of Actos and Plaintiffs' treating physicians and Plaintiffs were, justifiably, placed in a position to receive and rely on this information in considering whether to prescribe and/or consume Actos.

180. Plaintiff's treating physicians and Plaintiffs justifiably relied upon Defendants' material misrepresentations, including the omissions contained therein, when making the decision to dispense, provide, prescribe, accept, purchase, and/or consume Actos. Defendants, as was intended by their material misrepresentations and omissions, induced Plaintiffs and prescribing physicians to dispense, provide, prescribe, accept, purchase, and/or consume Actos.

181. As a direct and proximate result of the above-stated false representations and/or omissions as described herein, Plaintiffs' were injured as described above.

## NINTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (SPOLIATION)

182. Plaintiffs reallege and repeat those paragraphs above as if set forth fully herein.

183.      Defendants, TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED had a duty to preserve documents and materials related to Actos as soon as there was reasonable foreseeability of litigation.

184.      On information and belief, by 2000, said Defendants were aware of product liability claims, settlements, and litigation pertaining to Actos.

185.      Additionally, on July 19, 2002, TAKEDA PHARMACEUTICALS U.S.A. INC. instituted a broad litigation hold for Actos personal injury claims and litigation ("2002 Litigation Hold").

186.      According to the 2002 Litigation Hold,

A motion has been filed to add Takeda Pharmaceuticals North America, Inc. and Takeda Pharmaceuticals America, Inc. as defendants in a lawsuit.  The plaintiff in this lawsuit seeks damage for personal injury and wrongful death allegedly resulting from the use of certain prescription drugs, including Actos.

To be able to respond to discovery requests from the plaintiff, if that becomes necessary, we must take steps to preserve any documents that may be called for in this lawsuit.

**Until further notice, you are instructed to preserve any and all documents and electronic data which discusses, mentions, or relates to Actos.  *This means do not destroy, delete, throw away or otherwise discard any such documents or electronic data.***  This includes correspondence, records, and data, contained in your paper and electronic files, regardless of form and include email correspondence and attachments and electronic data.

**Action Steps**:

Please interpret this directive in its broadest sense to prevent the deletion or destruction of any recorded information and data relating in any way to Actos.

Please take steps immediately to preserve such documents and data within your department.

Please distribute his memo to members of your group and advise them of the importance of following these instructions.

*See* TAK-RIM30b6-00000653.  (emphasis in the original).

187.     The 2002 Litigation Hold was disseminated to Takeda entities, including TAKEDA PHARMACEUTICAL COMPANY LIMITED and TAKEDA DEVELOPMENT CENTER AMERICAS INC.

188.     TAKEDA PHARMACEUTICAL COMPANY LIMITED ignored and took no action in response to the 2002 Litigation Hold.

189.     The 2002 Litigation Hold was "refreshed" in 2003, 2006, 2007, 2008, and 2011.

190.     Despite actual knowledge of their duty to preserve evidence, files of at least forty-six witnesses across multiple continents were destroyed, delete, or otherwise lost by TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED, directly or through their agents.

191.     Many of the witnesses whose files were destroyed played critical roles in the development and marketing of Actos.  Examples of the custodians whose files were destroyed in whole or in part, include a President of Takeda Global Research and Development (John Yates); Managing Director (Kiyoshi Kitizawa, David Eckland); Vice President, Pharmaceutical Research Division (Masaomi Miyamoto, Takashi Nonoyama); Director, Pharmaceutical Development Division (Mikihikio Obayashi); Senior Director, Pharmaceutical Development Division (Katsuhisa Saito); Representative Director, Chairman of the Board (Kunio Takeda), Senior Vice President – Sales (Harry (Dean) Hart); Senior Manager – Product Safety (Doug

Joseph), Director Epidemiology, Pharmacovigilance (Annette Beiderbeck); and Vice President-Regulatory Affairs (Philip Collett), to name a few.

192.     Each of these witnesses would have been expected to have custodial files containing critical and relevant documents.

193.     Nevertheless, between 2000 and 2011, TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., and TAKEDA PHARMACEUTICAL COMPANY LIMITED directly or through their agents, deleted the electronic files, erased hard drives, and destroyed paper files of 46 custodians.

194.     At least 38 of the 46 custodians whose files were destroyed were deleted after 2002 when Takeda already had in place the 2002 Litigation Hold.

195.     Moreover, the files of these custodians were destroyed in a manner that contravened the retention policies that governed the destruction of documents during the relevant time.

196.     The forgoing presents *prima facie* evidence of spoliation.

197.     The manner and speed with which the custodial files were destroyed, the characteristics of the custodians who were targeted (many senior executives involved in critical regulatory, safety, and science positions), and the widespread nature of the destruction is evidence that the massive destruction was done in bad faith.

198.     The extraordinary prejudice to Plaintiffs from this widespread and calculated destruction of documents of key witnesses involved in all aspects of Actos' development and distribution is compounded by the fact that there is no way to conclusively establish what was

lost and meaningful restoration for many of the files is impossible.

199.     Additionally, backup takes fail over time, further reducing the ability to restore the documents that were deleted.

200.     Based on the evidence of intentional and egregious spoliation and resultant severe prejudice to Plaintiffs, the Plaintiffs seek dismissal of Takeda's Answer and entry of default judgment and sanctions, including sanctions, a fine, a spoliation adverse inference charge, and restoration of as much of the destroyed materials that can be recovered.

## NINTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS
## (LOSS OF CONSORTIUM)

201.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this complaint as if fully restated here.

202.     Plaintiffs are legally married, and as such, are entitled to the comfort, enjoyment, society and services of one another.

203.     As a direct and proximate result of the foregoing, Plaintiffs were deprived of the comfort and enjoyment of the services and society of their spouses and have suffered and will continue to suffer economic loss, and have otherwise been emotionally and economically injured.  The Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiffs seek compensatory and punitive damages from the Defendant as alleged herein.

## TENTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS
## (WRONGFUL DEATH)

204.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this complaint as if fully restated here.

205.     Decedents suffered fatal injuries due to the Defendants' wrongful conduct as set forth herein.

206.     Decedents were survived by distributees who are beneficiaries to this cause of action.

207.     Plaintiffs incurred conscious pain and suffering leading up to decedents' untimely deaths.

208.     Due to decedents' deaths, the decedents' distributees lost the value of decendents' financial benefits, services, society, comfort and care for which they are entitled to recover and the estate incurred medical expenses and incurred other necessary expenses related to decedents' deaths.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.    Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

2.    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

3.    Awarding Plaintiffs attorney's fees;

4.    Awarding Plaintiffs the costs of these proceedings; and

5.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues.


Dated:  April 22, 2015


By:     /s/ Paul J. Pennock
                Paul J. Pennock (PP3315)

**WEITZ & LUXENBERG, P.C.**
*Attorney for Plaintiffs*
700 Broadway
New York, New York 10003
Phone: (212) 558-5500
Facsimile: (212) 363-2721
ppennock@weitzlux.com